RICHARD GENEY v. MATTHEW H. MAYNARD, MARLOW H. CROCKER, EGBERT J. MAPES AND JOHN HALL.

*Equity pleadings—Bill to quiet title—Complainant's possession—Sale on execution—Homestead rights.*

A court is not bound by the opinion of the counsel concerning the theory of a bill for relief, but whatever the purpose of its allegations, is governed by the case actually made by the bill.

A bill which is so framed as to call for redemption, and the setting aside of interfering obstructions on equitable grounds, even though it contains allegations appropriate to a statutory proceeding to quiet title,

presents a case which falls under the inherent jurisdiction of the court of chancery and needs no statutory aid.

Occupancy of rooms in a building containing several separate leaseholds is not to be assumed to be the "actual possession" required in one who seeks to quiet title to the premises, in the absence of a showing that he does not hold under defendants; and if he does not, he is in a situation to bring ejectment for the holdings occupied by others than himself.

Where several judgments against the same person are taken at the same time and are issued, delivered for service and levied at the same time, the sheriff, unless directed otherwise, may offer the premises on which he has levied, to be sold together, under all the writs.

Where a man owning two lots has put up a single building covering one of them and a small part of the other, the premises so covered should be sold on execution as one parcel.

Where the owner of two lots takes up his residence on one, and puts up a building which covers all the other lot and a small part of that on which he resides, his homestead right does not cover that portion of the residence lot used for the building.

Appeal from Marquette. Submitted June 17. Decided November 10.

BILL to remove cloud from title. Complainant appeals. Dismissal affirmed.

*F. O. Clark* for complainant.

*D. H. Ball* and *M. H. Maynard* for defendants.

GRAVES, J. Many topics are agitated in this case, but they are generally moot questions. Both counsel have assumed that the bill is filed under the statute to quiet title. Admitting this to be correct, the record discloses insuperable objections.

Waiving the point raised by the defense that complainant is proved to have no title, it is only needful to refer to the defect relative to possession.

The subject matter of the suit is a parcel of land of lot 39 and seven feet off of lot 40 in Negaunee, covered by a building containing two stores and several rooms above suitable for various purposes. The bill applies to the premises as an

entirety and not to any particular part or portions in severalty. At the time of the bill and long prior thereto the several parts of the property were held separately by independent occupiers and not jointly or in common, and it is too plain to admit of question that complainant was not an occupant, or in possession of the stores and a portion of the room overhead. Granting that he was occupant of some of the rooms on the second floor, it is not to be assumed that his occupancy there was the "actual possession" required by the statute, or anything beyond a holding under the possession of Crocker and Mapes. But if otherwise it was a possession which went no further than the actual occupation, and in view of the claims made by Crocker and Mapes and the occupancy of the other portions he was in a situation to bring ejectment for the holdings beyond those occupied by himself.

If therefore we contemplate the bill as counsel have regarded it, the case it makes is different from the case made by the facts. But the court is not bound by the opinion of counsel concerning the theory of the bill. We are to look at the case made, and though allegations appear which are appropriate to a bill under the statute to quiet title, still, if in fact the bill is constituted to call for redemption and on grounds of equity to set aside or displace interfering obstructions, a case is presented which falls under the inherent jurisdiction of the court and needing no aid from the statute. *Ormsby v. Barr* 21 Mich. 475; s. o. on motion for rehearing 22 Mich. 80; *Jones v. Smith* id. 360. See also *King v. Carpenter* 37 Mich. 363. And this bill is so far within this theory as to make it expedient to see what in effect is the case actually set forth under it.

The allegations are that in 1867 the complainant owned adjoining lots 39 and 40 in Negaunee, each being thirty-three feet in width, and with his family resided in a small building situated on the east twenty-six feet of lot 40; that on the 26th of September of that year he borrowed of John Maroney, for the purpose of erecting a block on the premises, the sum of $800 to be repaid in one year with interest at ten per

cent., and to secure the loan gave his note and a mortgage on the two lots, his wife joining in the mortgage; that he went on with his enterprise and put up a two-story building designed and arranged for several separate leaseholds and covering all lot 39 and a narrow strip seven feet wide off of the west side of lot 40, and worth $2000; that in making this improvement he fell in debt several hundred dollars beyond the money borrowed of Maroney, and May 9, 1868, these debts passed into three judgments in favor of as many different creditors, and aggregating, inclusive of the taxed costs, the sum of $1233.48; that defendant Maynard acted as attorney on the part of these creditors, and likewise held the mortgage as attorney for the mortgagee; that by his direction executions were issued to the sheriff, who levied on the parcel covered by the new building, and on the 28th of December, 1868, sold the same to Maynard and gave him a certificate of sale:—a copy is set forth in the bill; that about three and a half months later and on the 17th of April, 1869, Maynard began foreclosure of the mortgage by publication, and on the 17th of July following became purchaser in that proceeding of both lots 39 and 40 as one parcel, for $909; that on the 12th of April, 1870, and when the fifteen months for redemption from the sale on the executions had been out a month and the time allowed the debtor had been out four, and when about three months' redemption time by statute was left to redeem from the foreclosure sale, complainant sold and conveyed the east twenty-six feet of lot 40, being that portion not appropriated to the new block, for $1050; that said sale was made with the assent and approbation of Maynard and under an agreement with him to have and receive the proceeds and apply the same to the payment and redemption of the mortgage sale, there being more than enough for that purpose, and whatever should remain, to credit on the judgment debts, and that said sum was so paid and received and the mortgage thereby satisfied in fact; that complainant did not understand that any writing was necessary to show the fact of the payment and redemption of the mortgage, and did not receive any; that Maynard explained

that he merely wished to realize the debts, and then agreed, as he had frequently promised, to allow complainant a year beyond the statute time to redeem from the execution sale, and that the proceeds of any part of the property complainant might sell, together with the rents, should be paid over to apply on the debts; that except a portion on the second floor which complainant had proceeded to occupy after selling the east twenty-six feet of lot 40, the new block covering the rest of the two lots was held in separate parcels by tenants not connected in any way, and Maynard was the recipient of the rents; that the sale under the executions was irregular and void, and the reason complainant did not contest it and cause it to be set aside was the before mentioned agreement with Maynard for redemption; that Maynard received by way of rents nearly sufficient to satisfy the judgments, and that complainant has been ready and willing always, and now offers to pay the balance whatever it may be; that the illegality in the sale on the executions is in this,—that lot 39 and the seven feet strip off of lot 40 were sold as one parcel on one bid on all three executions for $1200, and that lot 40, from which the strip was taken, was complainant's homestead; that Maynard has refused to carry out the agreement for redemption, and has taken deeds on the execution sale and on the foreclosure, and has conveyed lot 39 and the seven feet off of lot 40 to defendant Crocker, who purchased for defendant Mapes as well as for himself and quitclaimed to him accordingly, after having mortgaged to Hall to secure a debt both owed him; that Crocker, Mapes and Hall respectively had notice of complainant's equities, and the two former claimed title to lot 39 and seven feet off of lot 40 under the purchase from Maynard, and threatened to expel complainant.

Although it may not be strictly necessary for the purpose of reaching a decision, still a brief reference to what we understand to be the objections against the sale on the executions will not be quite out of place. The first seems to be that, as there were three executions, it was contrary to law to offer the premises at once and under all these writs. It occurs immediately to inquire how otherwise the property

should have been offered? The judgments were all taken at the same time, and so far as there is evidence of what occurred, it seems that the executions were all issued, delivered for service and levied at the same time. The liens arose simultaneously and no fact is indicated to entitle either to a preference in law or equity.

Clearly there was no other course open to the sheriff in the absence of an authoritative direction outside of his writs. He could not justify himself in making any distinction, and had he assumed to sell on one alone the court must have given the same effect to it as though he had sold on all. The principle was acted on in *Campbell v. Ruger* 1 Cow. 215.

It is further objected that inasmuch as the law requires where executions are laid on "several known lots, tracts or parcels," that "such lots, tracts or parcels shall be separately exposed for sale," it was not lawful to sell lot 39 and the seven feet off of lot 40 as one parcel. The point has no substance. The premises were neither "several" or two " known lots, tracts or parcels." By covering lot 39 and the little adjoining strip of lot 40 with the new building under the circumstances proved, the complainant as to this question converted the undivided or whole lot 39 and the fragment of lot 40 into an entirety and caused it to be one " known parcel" instead of two. It would have been absurd to treat this strip of seven feet in width and encumbered by the side of the new block as a separate and distinct parcel for the purpose of levy and sale. A leading object of the statute is to secure the best price attainable, and nothing could be much better adapted to defeat it than such a construction and application as this objection implies.

The last point is that the sale of this strip off of lot 40 was wrong because lot 40 was complainant's homestead. The fact necessarily involved is not true. The strip in question, whatever may have been the character of the whole lot originally, was not a homestead or parcel of one. It was severed from the remaining twenty-six feet of the lot by the voluntary act of complainant. He retained his place of dwelling on the rest of the lot, and deliberately appropriated the seven

feet to something else. He devoted it to a foreign use. He caused it to become incorporated with the territory platted as lot 39 in order to sustain a business block, and deprived it of every badge and quality of a homestead property. In fine, he " selected " as his homestead, and held in occupancy as his homestead, if any place, the remaining twenty-six feet of lot 40, and " selected " this strip to be *not* held or " occupied " as a homestead or as a parcel of one.

It has been observed that the bill makes no complaint of the mortgage and contains no averment against the validity of the sale on foreclosure or of any of the proceedings. The sufficiency of the foreclosure to carry a good title is virtually conceded. The position is that the proceedings were prevented from ripening into a perfect title in Maynard by the fact of payment and substantial satisfaction of the mortgage on the 12th of April, 1870, and about three months before the expiration of the time allowed for redemption, and this is the central fact and essential equity in complainant's case. The mortgage was executed by both complainant and his wife in 1867, before the building was put up, and on both lot 39 and lot 40. If in fact it was not paid, the case fails. No foundation remains on any possible theory of the bill. A perfect title followed, and the controversy about the sale on the executions, is, for the purpose of the present case, of no importance.

The important inquiry, therefore, is whether the evidence sustains the complainant in regard to this pivotal fact in the case made by his bill. There is substantial agreement in the testimony that complainant on the 12th of April, 1870, conveyed the east twenty-six feet of lot 40 for $1050 with the approbation of Maynard, and that the proceeds in money and short-time securities went immediately into Maynard's hands. That he gave the buyers his written undertaking to release this purchase from the mortgage on their paying those securities on or before July first is well proved ; and the fact is also established that on their completing the payment some few weeks later than the time fixed, he did release by giving them his quit-claim deed.

The evidence agrees that as part of the transaction on the 12th of April there was an understanding between Maynard and complainant that the former should have the rents of the new block and apply them on the remaining indebtedness, and it seems that something was afterwards received by him from this source, but exactly how much is left uncertain. Maynard claims that the amount was small, and complainant admits it was much less than what remained of his indebtedness.

But the disagreement is absolute in regard to what application of the $1050 was agreed on. Complainant swears positively that this was raised by sale of the twenty-six feet of lot 40 and paid to Maynard and received by him in satisfaction of the mortgage debt and redemption from the foreclosure, and that there was an excess of $72 or $73 which was agreed to be applied on the judgment debts, and that the whole transaction, except the conveyance of the twenty-six feet, was oral, and that he, complainant, received no writing whatever in regard to it. To some extent the complainant is corroborated. But the proof is clearly against him and a single item from one of his witnesses lets in some light concerning the likelihood of his being mistaken. In consequence of liquor he was not always in a condition to justify confidence in his attention or his memory.

Maynard swears that the proceeds of the sale of the twenty-six feet of lot 40 were not received on the mortgage, but on the judgment indebtedness, and that the agreement was that they should be so applied; that only $600 of the $1050 was received on the 12th of April, the residue not being realized until later, and that he gave complainant on that day his written engagement to apply the amount then received, $600, on the judgment indebtedness. The evidence supports this explanation. The legal time for redeeming against the execution sale had already expired and it is probable that complainant was trying to rescue the property from that sale rather than from the other on which there still remained three months, and if the arrangement had been as complainant now thinks, that the mortgage was considered satisfied, the

purchasers of the twenty-six feet of lot 40, who were concerned in the transaction, could have had no very sensible reason for insisting, as they did insist, on a release from Maynard as a condition. The mortgage being out of the way, Maynard had no claim on the twenty-six feet.

As already stated, the main fact of complainant's case, that the mortgage was paid, is actually disproved, and the effect of the evidence is that nothing was ever received applicable to it, and that Maynard never intended to open the foreclosure unless on payment. The judgments were given May 9, 1868, and the damages aggregated, after correction of one of the judgments by striking off $100 which had been included by mistake, the sum of $1177.03, and computing interest at seven per cent. to the 12th of April, 1870, when the homestead property was sold, the sum at that time was $1335.62. Deducting the proceeds of that sale, there still remained $285.62 exclusive of the taxed costs, which were $57. If the sum at which the property was struck off on the execution sale is taken as a basis, the difference is small. The sale was December 28, 1868, and the price $1200. On April 12, 1870, it amounted, with interest at seven per cent., to $1309.50, and deducting the price obtained for the homestead there would yet remain $259.50.

Without stopping to notice the theory of complainant's pleading or the shape of his case as marked out by his oath, the weight of evidence determined that the arrangement or understanding between complainant and Maynard, whatever was its precise character, was terminated in the fall of 1870, and that the whole amount which had been received at that time was considerably less than the judgment debts whether we consider the damages and interest, or the price bid on the execution sale and interest, as the equivalent of the debts, and that although the mortgage debt was accumulating interest at ten per cent., no surplus arose out of the transactions referred to, to be applied upon it.

I am of opinion that the decree dismissing the bill cannot be rightly disturbed and should be affirmed with costs.

The other Justices concurred.