### F. W. WOLF v. P. J. BUTLER.
#### No. 436.

1. **Homestead—Intention Prior to Occupancy.**—In order to impress property with the character of a homestead prior to its occupancy as such, as against a person dealing with the owner in relation thereto, without notice of the owner's intention, there must be not only an intention entertained in good faith to use the property as such as soon as practicable, but there must also be some clear and definite act, such as will amount to reasonable notice of such intention.

2. **Same—Business Homestead.**—In order to impress the character of homestead upon business property prior to the time it is occupied as such, it must appear that, as the head of a family, the owner is entitled to a homestead, that he intended to use it as soon as practicable in the future for exercising his calling or business, and such intention must have been manifested by such acts as were reasonably sufficient to give notice of the intention to appropriate it as such.

APPEAL from Dallas.    Tried below before Hon. R. E. BURKE. ˙

*Leake, Shepard & Miller, Dickson & Moroney,* and *H. C. Coke,* for appellant.—1. To require that the intention of one to make his home upon the lot should be unmistakably shown, imposes a greater burden of proof than the law requires. Rev. Stats., art. 1317; Baines v. Ullman, 71 Texas, 529; Railway v. Bartlett, 81 Texas, 42; Emerson v. Mills, 83 Texas, 385.

2. The purchase of the property, with the express intention to "use it as the place to exercise the calling or business of the head of the family," made it a business homestead. Barnes v. White, 53 Texas, 628; Archibald v. Jacobs, 69 Texas, 248; Gardiner v. Douglass, 64 Texas, 78; Franklin v. Coffee, 18 Texas, 413.

*A. S. Lathrop* and *Short & Hill,* for appellee.—The intention of one, not at the time engaged in business, to use and occupy a lot upon

which to carry on a business which he intends to follow in the future, is not sufficient to fix upon such lot the homestead character.    Archibald v. Jacobs, 69 Texas, 252; Willis Bros. v. Morris, 66 Texas, 629; Miller v. Menke, 56 Texas, 540; Shryock v. Latimer, 57 Texas, 677; Pfeifer & Co. v. McNatt, 74 Texas, 640; Harle v. Richards, 78 Texas, 83.

FINLEY, ASSOCIATE JUSTICE.—This suit involves the validity of the mechanic's lien upon property claimed to be the homestead.    The amount of the debt to secure which the lien is claimed; that it accrued for material furnished and work done upon the building against which the lien is sought to be enforced, under contract; and that the statutory requirements in relation to fixing the lien, were fully and strictly complied with, are admitted facts.    The contract was verbal, and made with the husband alone, while the owner was a married man, the head of a family, and the validity of the lien is contested upon the ground that the property was intended as the homestead—both residence homestead and business homestead—and had been designated as such before the contract was entered into, etc.    The property had not been actually occupied as the homestead, but its character as such, it is contended, had been impressed upon it by intention.  The owner, A. Wagenhauser, was a brewer, and the building, a brick structure, was intended for a brewery; and there was evidence tending to show that it was also intended as the place of family residence.    Appellee, Butler, knew at the time he entered into the contract that the building was intended by Wagenhauser as a place for the manufacture of beer; and the evidence tended to show that he knew that it was Wagenhauser's intention to personally engage in the business.    There is no evidence showing that Butler knew of any intention on the part of Wagenhauser to make it a place of family residence.    On the trial, the court charged the jury as follows:

"To impress the character of a homestead upon property, when there has been no previous occupancy, as in this case, there should be a bona fide intention to dedicate it as a home, and this intention should be evidenced by some *unmistakable* acts showing an intention to carry into execution such intent.    If from the evidence you find and believe that at the time Butler furnished the material and did the work on the brewery, it was the bona fide intention of Wagenhauser to use the building as a home for himself and family, and this intention was evidenced by some *unmistakable* acts on the part of Wagenhauser of preparation and subsequent early use of the property as a home, as soon as possible under the existing circumstances, then since the contract with Butler was not in writing, signed and acknowledged by his wife, Mrs. Wagenhauser, as required by law, no lien could attach to the same, and in this event you should find for the plaintiff, Wolf."
This charge is intended to present the law as to the issue of residence homestead, informing the jury what would constitute a designation of

the property as the residence homestead of the family, and is assigned as error.

In Barnes v. White, 53 Texas, 631, it is said: "Where there has not been a previous actual occupancy, there should be at least a present bona fide intention to thus dedicate the property, coupled with such acts of preparation and subsequent early use as a homestead, as would reasonably amount to this notice, and thus prevent that from being used as an instrument of fraud which was designed as a shield of protection."

In Brooks v. Chatham, 57 Texas, 33: "There must be something more than mere intention; there must be some act done which will evidence an intention to use it as a home."

In Gardner v. Douglas, 64 Texas, 78: "With us an actual occupancy of the land is not, under all circumstances, an indispensable prerequisite in impressing upon it the homestead character. But where there has been no previous occupancy of the land as a homestead, then, to invest it with that quality, it has been held essential that there be an existing bona fide intention to dedicate the property as a homestead, and this intent must be accompanied with such acts of preparation and such prompt subsequent occupation as will amount to notice of the dedication, and thereby prevent this most valuable right from being converted into an instrument of fraud."

In Archibald v. Jacobs, 69 Texas, 252, this language in the charge was approved: "The person claiming the same must not only intend to dedicate the same for homestead purposes, but must actually occupy it for such purposes, or must take such steps toward preparing the same for use and occupancy as a homestead as reasonably to give notice of his intention to use and occupy the property, either as a home or place to exercise his calling or business."

In Franklin v. Coffee, 18 Texas, 417, Hemphill, C. J., says: "There must be a preparation to improve, and this must be of such a character and such an extent as to manifest beyond doubt the intention to complete the improvements and reside upon the place as a home."

In the McKay case, 30 Texas, 191, Willie, A. J., says: "The intention thus to appropriate the property shall not only be found in the mind of the party, but it should be evidenced by some *unmistakable* acts showing an intention to carry the design into effect; or some sufficient reason should be given why this intention of the party was not demonstrated by such acts."

In Cameron v. Gebhard, 85 Texas, 610, the various decisions are reviewed, beginning with Franklin v. Coffee, 18 Texas, 413, and including the latest cases. After this review, Mr. Brown, A. J., says: "Intention can not give a homestead right; but it is at the same time equally true that all other things combined can not give it without the intention to dedicate to the uses of a home. Valuable and costly improvements, coupled with long and continued possession, without the existence of a bona fide intention to make it a home, will not make it

such.   But the placing upon the premises unhewn logs for the purpose
of erecting thereon the humblest cabin, with a bona fide intention to
occupy as soon as the cabin can be built, secures the right.   From the
decisions, it is apparent that intention is almost the only thing that
may not be dispensed with in some state of case; and it follows, that
this intention in good faith to occupy is the prime factor in securing
the benefits of the exemption.   Preparation—that is, such acts as
manifest the intention—is but the corroborating witness to the declara-
tion of intention, the safeguard against fraud, and an assurance of the
bona fides of the declared intention of the party."

It is further said, that it is impossible to lay down any definite rules
to govern in all cases; each case must rest upon its own peculiar state
of facts.   We have quoted thus liberally from the decisions, with the
view of ascertaining what may be announced by the trial court to the
jury as the proper legal test to be applied in determining whether
there has been a designation of the property as the homestead, in cases
where there has been no previous actual occupancy.   Of the cases
quoted from, the Archibald case alone deals expressly with the charge
of the court.   That part of the charge which instructed the jury, that
the person claiming the homestead must not only intend to dedicate
the property to homestead purposes, but must take such steps toward
preparing the same for use and occupancy as a homestead as reason-
ably to give notice of such intention, was approved as a correct state-
ment of the law.   It is quite frequently improper to charge the jury in
the language of a decision of the Supreme Court.   To adopt the lan-
guage of the judge in reasoning out the propositions to be determined
would often amount to a charge upon the weight of evidence, and in-
fringe upon the province of the jury.   The various expressions upon
this particular subject manifest the impropriety and unsafeness of such
a course.   We think, however, that it may be safely assumed that our
decisions settle the following propositions: A mere intention to use the
property for the purposes of the homestead, though entertained in good
faith, will not constitute it the homestead against a person dealing
with the owner in relation thereto without knowledge on his part of
such intended use of the property.   In order to impress the property
with the character of such intended use, as against such a person, the
bona fide intention to appropriate the property as the homestead, as
soon as practicable, must exist in the mind of the owner; and that in-
tention must be indicated by acts of such clear and definite import as
will amount to reasonable notice of the intention to so use the prop-
erty.   To say that such acts must *unmistakably* show the purpose to oc-
cupy the property as the homestead, as *soon as possible*, we think re-
quires a higher degree of evidence of intended use than is warranted
by our decisions.   In this respect we think the charge erroneous.

Upon the issue of the business homestead, the court charged the
jury in the following language: "If from the evidence you find that
Wagenhauser had the brewing building erected for the sole purpose

of brewing beer, and with no intention of using it as a home for himself and family, and that the work was done and the material furnished by Butler to build the house for this purpose, then you are told that the contract to build said brewing house need not have been signed and acknowledged by Mrs. Wagenhauser, but that the lien of Butler would be legal and valid, notwithstanding the fact (if you find such to be the fact) that Wagenhauser intended to use the same as a place to carry on his calling, that of a brewer."

This charge is assigned as error, and the question is presented, whether a business homestead can be created by intention prior to actual occupancy and use for that purpose. It has been uniformly held, since the Coffee case, 18 Texas, 413, under all our different Constitutions, that the character of homestead for family residence may be impressed upon property prior to its actual occupancy as a home, so as to exempt it from forced sale. Upon this proposition, the construction of our present Constitution is the same as those which preceded it. Previous Constitutions exempted only the residence home of the family, while the present Constitution widens the exemption, and includes within its protecting folds, "a place to exercise the calling or business of the head of the family." The article of the Constitution defining the homestead in a city, town, or village, as exempted, is as follows: "It shall consist of lot or lots, not to exceed in value $5000 at the time of their designation as a homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of the family." Const., art. 16, sec. 51.

The same language which exempts the sheltering home of the family, shields the place of business of the head of the family. If the language of the Constitution leads to the conclusion that the residence homestead may be acquired prior to occupancy as a home, then, by the same construction, "the place to exercise the calling or business of the head of the family," may be designated prior to occupancy and use as such. Not only is the language of the Constitution conferring the exemptions identical as to each, but the same reasons and rules of logic which will support the one proposition apply with equal force to the other. In the Gebhard case, 85 Texas, 616, it is said: "If a homestead can not be acquired until it is occupied, then no one can acquire a homestead exempted from forced sale unless he buys an improved place; and then he must have a race with the sheriff for possession. The unimproved lands of the country and the vacant lots of our cities can not be acquired for the purpose of making a home by the man who is indebted, except at the risk of turning it over to a creditor. If a man owes nothing, or is able to pay all he owes, he does not need the exemption; if he has other property, he can protect his home by pointing out that other property for sale; but if he has nothing but the homestead, he comes within the necessity of the constitutional provision, and to him is the chief value of exemption."

Every suggestion of reason in this strong statement of the distinguished judge delivering the opinion finds as sure a foundation when applied to the place of business as it does in relation to the family domicile.

In the Archibald case, before referred to, Mr. Stayton, C. J., says: "It may be doubted if property intended to be used at some future time as a place of business, but never in fact so used before an assignment, would be exempted from the operation of an assignment by the fact that the head of the family had commenced to improve it with intention to make it his place of business; no other place of business existing at the time of the assignment." We are referred to this expression of doubt as containing a statement of the law of this case; but we can not reach that conclusion. In the same case the court approves, as a correct statement of the law, after striking out a clause which is immaterial to this inquiry, a charge which places the residence home and place of business upon the same footing, with reference to designation prior to occupancy. The question under consideration here was not necessary for decision in that case, and the case was determined upon another and different proposition.

There may be some considerations of administrative policy which would suggest easier means of acquiring and surer safeguards to the holding of the residence homestead, over that which should obtain as to the place of business; but consideration of such a suggestion is within the domain of the legislative department of the government, and with it the judicial has nothing to do.

We have carefully refrained from a discussion of the evidence in this case, and wish to be understood as passing upon the charge of the court alone. The question of what would constitute a sufficient designation of the business homestead, prior to actual use as such, is not presented for determination, the court below having excluded that issue from the jury. In view of another trial, however, we think it proper to say, that proof of the mere fact that a man has taken steps towards the preparation of a place to carry on his business, intending so to use it in future, would not alone justify the conclusion that the property is the business homestead. It must further appear that, as the head of a family, he is entitled to the homestead, that he intended to appropriate it, as the head of a family, for exercising his calling or business, and such intention must have been manifested by such acts as were reasonably sufficient to give notice of the intention to appropriate the property as the business homestead.

On account of the errors in the charge, the judgment is reversed and the cause remanded for another trial.

*Reversed and remanded.*

Delivered October 10, 1894.