JENSEN, Appellant, v. GRIFFIN et al., Respondents. (OLSON et al., Appellants.)

(144 N. W. 119.)

1.  **Appeal—Assignments of Error—Sufficiency.**

Assignments of error which referred by number to the "conclusion" excepted to, and followed such reference by a statement that a purported copy of such conclusion followed, were sufficient, although through mistake, there was copied, as part of each assignment, the same numbered "finding;" since the mistake was too apparent to be misleading.

2.  **Homestead—Acquisition—Necessity of Occupation—Intent.**

Under Sec. 3222, Pol. Code, providing that a homestead must embrace the house used as a home, the creation or existence of a homestead depends largely upon the intent to use the premises as a home, and while actual present occupancy is not required, yet, where the owner and family were in present occupancy of an old house, unfit for a home, on the premises, while a new one on another part thereof was being erected by him, he being in the business of building houses to sell, and having tried to sell the new one, held, that these facts did not show that he built the new house intending to use it as the family home, there being no finding that the owner thought the old house unfit for a home.

McCoy and Smith, J. J., dissenting.

3.  **Same—Abandonment of Old House—Mechanic's Lien.**

In an action to enforce a mechanic's lien upon a new house built on land on which the owner lived in an old house, the total abandonment of the old house as a homestead, occurring long after plaintiffs had furnished material and performed work which gave them a lien upon the new building, did not affect the right to the lien.

4.  **Selection as Between Two Houses—Communication of Intent—Mechanic's Lien.**

Under Sec. 3222, Pol. Code, permitting a selection of a homestead as between two houses used by owner's family at different times and places, held, that the owner's intent to select as their dwelling a new house being erected on part of the land occupied by an old one in which they were then living, must exist, and must also be communicated to materialmen and laborers before the materials and labor were furnished, in order to defeat the liens.

McCoy and Smith, J. J., dissenting.

5.  **Selection as Between Two Houses—Diminution of Homestead—New House For Sale or Rental.**

Under Pol. Code, Sec. 3222, requiring the homestead to embrace the house used by owner as a home, and permitting him

to select as between two houses, etc., **held,** that the head of the family has the right and power, acting in good faith toward the family, to diminish the homestead by using a part thereof as the site for another dwelling to be sold or rented.

McCoy and Smith, J. J., dissenting.

**6. Homestead—Election of, With New Dwelling House—Old Building as Appurtenant.**

Under Pol. Code, Sec. 3225, providing, in effect, that a homestead shall not embrace buildings, other than the dwelling house, which are appurtenant to the homestead as such, **held,** that an owner, upon giving proper notice of his intention, may elect and claim all the former homestead, together with a new building, either erected or to be erected, provided the old buildin, is to be used in good faith as a part of the dwelling house, or, upon occupancy of the new dwelling, is to be entirely abandoned as a dwelling house and to become but an outbuilding used in connection with the homestead.

(Opinion field December 5, 1913.)

Appeal from Circuit Court, Miner County. Hon. ALVA E. TAYLOR, Judge.

Action by J. N. Jensen to enforce a mechanic's lien against Richard Griffin and wife and D. A. McCollough, in which Peter Olson and other lien claimants were joined as defendants. From a judgment for plaintiff and the other lien claimants against Richard Griffin personally only, plaintiff and certain claimants appeal. Reversed.

*Null & Royhl,* for Appellants.

Homestead must not embrace more than one dwelling house in which he resides. Sec. 3225 Pol. Code. It must embrace the house used as a home by the owner thereof. Sec. 3222 Pol. Code.

When the labor and materials were contracted for and furnished, and the right to a mechanic's lien had become vested, the debtor was residing in the old house; hence, at that time his homestead consisted of the house and lot where he then resided, with the right to claim such contiguous lots as he might own, not including another dwelling house.

Our statute forbids the presence of two dwellings on the exempt property. While a debtor may take down an old house and build a new one without forfeiting his right to homestead, he cannot erect the new house as a second dwelling on the property. The debtor had built other houses and sold them, and he built this

house and, during its construction, offered it for sale. Wright, 3 Bissell, 359, Judge Miller; Western Mortgage and Inv. Co. v. Buford, 17 C. C. A., 602; Railway v. Winter, 44 Texas, 597.

Where a debtor owns a double house, occupying one part as his residence and renting the other, he can only claim as exempt the portion in which he resides. Dyson v. Sheley, 11 Mich. 528; Tierman v. Creditors, 62 Cal. 289. The selection must embrace the house used as a home. Knorr v. Lohr, N. W. 904, (Iowa.) When the debtor erected the dwelling on the contiguous lot, he thereby excluded such lot and building from his homestead.

*C. C. Caldwell,* for Respondent.

*McCullough, Farmer & Blewitt,* for Respondents, Richard and Beatrice A. Griffin.

The first five assignments of error are defective in that they wholly misquote the several conclusions of law to which they refer. 2 Cyc 985. When the construction of the new house was begun, the old house was, because of its age and condition, *not a fit dwelling house for the respondents, Griffin and their family* (Fifth Finding of Fact.)

Before the completion of the said new house, and before the filing of the Mechanic's Lien herein, the said respondents began to move into said new house, and this with the intention of occupying said house as a home. The fact that the new house was constructed upon lot "one" whereas the Griffin family had previously actually resided upon lot "two," is an immaterial fact. The homestead statutes should be liberally construed in the debtor's favor. Kingman v. O'Callaghan, et al., 4 S. D. 628. To abandon a house when it becomes unfit for occupancy and to erect and occupy another in its stead, is not to acquire a second home, and it becomes a matter of intent upon the part of the debtor. If the new house is constructed with the intent of using it as a second dwelling upon the property, then we agree with appellants' counsel that both the houses cannot be homestead property. It clearly appears from the findings that at the time the lumber and material for the house constructed on Lot "One" were furnished, Lot "One" and Lot "Two" were the homestead of the Griffins. But there were not two houses upon these two lots until the second house was completed, and the

second house was occupied even before it was completed. Therefore the restriction contained in said Section 3222 cannot apply.

But even if it should be held that the house on lot "two" was not abandoned, and that there were therefore two houses on defendant's property, then the last clause of said Section 3222 becomes operative, and these debtors "may select which he or she will retain as a homestead." Lubock v. McMann 22 Pacific 1145 (Cal.) ; Colbert v. Henley 64 Miss 374 (1 So. 631) ; Hoffman v. Junk 51 Wis. 613. One who purchases land with the intent to construct a residence thereon and occupy the same as a homestead, is entitled to the exemption even before he actually builds his house or lives upon the land. Kingman v. O'Callagh..n, et al., 4 S. D. 628. Upton v. Coxen 72 Am. State Reports 341; 5 Cyc 21; 21 Cyc 475.

WHITING, P. J. This action was brought for the purpose of foreclosing a mechanics' lien against certain real estate owned by defendants Griffin, being lots 1 and 2 of a certain city block. McCullough was made a party defendant owing to the fact that he was the holder of a mortgage against said real esate, which mortgage plaintiff sought to have decreed to be a lien subsequent and inferior to his; his rights depend upon those of the other two respondents and no separate mention of same will be made herein. The word "respondents," when used in this decision, will be understood to refer to the Griffins only, unless otherwise noted. The other defendants were joined owing to the fact that they also were mechanics' lien claimants, claiming liens on the same property, and they have become appellants herein. The trial court found that respondents were husband and wife; that, for several years prior to the dates hereinafter mentioned, they had, with their minor children, occupied, as their homestead, the premises in question; that the said lots are less than one acre in area and, with all the buildings and improvements thereon, do not exceed $5,000 in value; that prior to October, 1910, the improvements on said lots consisted of a small house built some 28 years prior thereto and not exceeding $200 in value, located on lot 2, a small barn on lot 1, moved thereon in October, 1910, but before the commencement of the building of the dwelling house hereinafter mentioned, and a well located on said lot 1; that said house, because of its age and condition, was not a fit dwelling

house for respondents and their family; that the said house on lot 2 and barn and well on lot 1 had been used together by respondents as their homestead, and for eight years prior to the filing of the mechanics' liens herein, said premises had not been used by any other person or persons for any purpose other than as the homestead of respondents; that respondent Richard Griffin had, for several years preceding the year 1910, purchased lots in said city and erected dwelling houses thereon for rental and for the purpose of sale; that about October, 1910, said Richard Griffin began the erection of a dwelling house on lot 1 and during the construction of the same, procured labor and material used in such construction, and which has not been paid for, from the several appellants in the amounts for which they claim mechanics liens herein; that said Richard Griffin at that time held the legal title to said lots; that the contracts for materials, supplies, and labor used in the construction of said dwelling house were the sole and individual contracts of the respondent Richard Griffin with the said mechanics' lien claimants and were not the contracts of his wife, and that she is in no manner liable to said mechanic's lien claimants upon said contracts; that Mrs. Griffin was at the new house practically every day of its construction, knew where the materials were purchased, and dictated some changes in the plan of the house; that, at various times while the said dwelling house was in the course of construction, respondent Richard Griffin offered the same for sale, the last time being when the house was near completion; that mechanics' liens were in due form filed by the several claimants; that, when the respondent Richard Griffin began the erection of said dwelling house, he was without sufficient means to pay for the labor and material to be used in the construction thereof and had made no arrangements for the funds for such purpose; that the respondents continued to reside in the house upon lot 2 until the spring of 1911 when they moved into the house on lot 1, beginning to move their furniture therein prior to the filing of the liens herein and moving therein with the intention of occupying such house as a domicile; that about May 1, 1911, being imediately after the completion of said new house on lot 1, the respondents vacated the house on lot 2 and took up their permanent dwelling place in the new house and have ever since continued to reside therein; that thereafter the house on lot 2

was occupied by a tenant for some five weeks but has since remained unoccupied. The above are the only findings material to a proper consideration of this appeal. From the above facts the court found and decreed that the several claimants were entitled to personal judgments against Richard Griffin but that they were not entitled to mechanics' liens against said new dwelling and the lot upon which it is situate because the said dwelling and lot was the homestead of the respondents. Were the above findings sufficient to support the said decree; there being no finding that respondents, at the time of the purchase of the building material, intended to use the new dwelling as their home?

Respondent urges that: ''The assignments of error are not sufficient to present any question to this court. * * * The first five are defective in that they wholly misquote the several conclusions of law to which they refer. * * * The * * * [other] assignments * * * are insufficient for the reason that they fail to point out the particulars of the errors assigned." The assignments last referred to are clearly not subject to the objection raised.

[1] In making each of the first five assignments the appellant referred by number to the "conclusion" excepted to and followed such reference with a purported copy of such conclusion. It appears that, through some one's oversight, instead of copying the proper "conclusion" there was copied, as a part of each assignment, the same numbered "finding." This is too apparent to be misleading, and respondent should not be heard to complain thereof.

[2] It seems to be conceded by both parties that the creation or existence of a homestead depends largely upon the intent of the parties. This is certainly true in those jurisdictions where, as in this state, the statute is so liberally construed as not to require actual present occupancy of the premises in order that they may become the homestead of the owner. Kingman v. O'Callaghan, 4 S. D. 628, 57 N. W. 912; Cameron v. Gebhard, 85 Tex. 610, 22 S. W. 1033, 34 Am. St. Rep. 832; Wolf v. Butler, 8 Tex. Civ. App. 468, 28 S. W. 51; Foley v. Holtkamp, 28 Tex. Civ. App. 123, 66 S. W. 891; Davis v. Kelly, 62 Neb 642, 87 N. W. 347. Respondents in their brief say, "If the new house is constructed with the intent of using it as a second dwelling upon the property, then we agree with appellants' counsel that both houses cannot be homestead property;" but they insist that no question of

intent is before us because: This (intent) was a question for the trial court and it has been decided by the trial court in favor of the respondents." Herein respondents are in error. As before noted, an examination of the findings of the trial court reveals the fact that said court wholly failed to find the owners' intent when building the new dwelling. There is one fact from which, if it were not for the other facts found, an intent to abandon the old building for dwelling purposes might possibly be inferred, namely, the fact that the old house was unfit for a home; but there is no finding that the owner thought it unfit and there are findings that they continued to live there until they moved into the new house and they rented the old house for others to live in. These facts certainly indicate an intent to use both buildings for dwellings, at least for a time; and, when we consider the further finding that Griffin was engaged in the business of building houses to sell and tried to sell the new house, there can certainly, from all the facts found, be no inference that respondents built this dwelling intending to use it as their home without which intent the building could not become a homestead prior to actual occupancy.

[3] If respondents' rights depend upon the total abandonment of the old building for dwelling purposes, such abandonment, if it ever occurred, took place long after appellants' liens had attached, and no abandonment after that time could be of any effect as against such liens; if their rights depend upon their abandonment of the old building as their dwelling place, even then such abandonment did not occur until long after appellants had furnished the material and done the work that gave them liens upon the new building, which liens could not be affected by any abandonment occurring thereafter.

[4-5] But respondents urge that, even if there was no abandonment of the old house as a dwelling house and there were therefore two dwelling houses on their property, they yet, under section 3222, Pol. Code, had a right to and did select the new house as their homestead. Section 3222 reads as follows: "The homestead must embrace the house used as a home by the owner thereof, and if he or she has two or more houses thus used at different times and places, such owner may select which he or she will retain as a homestead." Conceding that respondents did have the right to and did select the new house as their dwelling, yet the

findings fail to advise us as to when they made this selection. If not until after the contracts with appellants were made and the materials and labor furnished thereunder, then such selection came too late as against appellants, as the mental selection (the intent) must exist in order to give a homestead character to a dwelling house either erected or to be erected; if such selection had not been made (such intent had not come into existence) when the material and labor were contracted for, then, unless such intent came into existence after such contracts and was communicated to appellants before they furnished the materials and labor, upon furnishing same liens would attach in their favor. That such an intent is necessary in order to give to a dwelling house the homestead character is beyond all question. Betcher Co. v. Cleveland, 13 S. D. 347, 83 N. W. 366. If upon a new trial it should be established that the selection was made prior to such contracts or prior to the furnishing of materials and labor thereunder, then what notice was given to the world, and especially to these appellants, that respondents intended the new house for their dwelling place and had selected the same as their homestead? Certainly no construction should be placed upon our homestead law that will permit it to be used as an instrument through which a palpable fraud may be committed against a party relying upon conditions as they exist when they contract with the homestead claimant. The head of the family has the right and power, when acting in good faith toward the family, to diminish the extent of the homestead by using a part thereof as the site for another dwelling to be sold or rented. Wynne v. Hudson, 66 Tex. 9, 17 S. W. 110; Geney v. Maynard, 44 Mich. 578, 7 N. W. 173. Griffin was apparently exercising this right and power with the knowledge and consent of his wife. O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829. What was there to notify appellants that these respondents contemplated changing their home from the old dwelling place? While it must be conceded that the fact that the building was being erected upon land forming a part of the then homestead would ordinarily be sufficient to put contractors upon inquiry, yet here was a party who was in the business of erecting houses to sell and who was not financially able to build this house and pay for same without selling it. While it is important that the homestead right be protected, it is even more

imporant that the homestead right be not used as an instrument of fraud. To defeat appellants' liens it should appear that respondents formed the intent and made the selection before appellants entered upon these contracts and furnished materials and did labor thereunder. Even then the liens should be upheld if it appears that by their conduct respondents led the contractors to believe that this building was not to be used as their home. Wolf v. Butler, supra; Foley v. Holtkamp, supra. Respondents, abandoning all other contentions, and in the face of their concession above referred to, namely: "If the new house is constructed with the intent of using it as a second dwelling upon the property, then we agree with appellants' counsel that both houses cannot be homestead property"—cite Lubbock v. McMann, 82 Cal. 226, 22 Pac. 1145, 16 Am. St. Rep. 108, wherein the court held that, after a tract of land with a residence thereon had become a homestead, the owner was at liberty to erect a second dwelling house thereon and the whole would still remain a homestead.

[6]    We would refuse to follow this opinion if we did not believe the express provisions of our statute (section 3225, Pol. Code) forbids the rule therein laid down. An examination of the dissenting opinion written therein and of the real question before that court revealed by the "opinion of department 1" referred to in the majority opinion reveals to our mind that the majority opinion is unsound in principle as well as but obiter dictum upon the proposition for which respondents have cited it as an authority. The rule laid down in Re Liggett, 117 Cal. 352, 49 Pac. 211, 59 Am. St. Rep. 190, should prevail where a second dwelling house is erected after a homestead is established the same as where the two dwellings are in existence when homestead is first claimed.

Summarizing we would say: While section 3222, supra, provides that the homestead "must embrace the house used as a home," this section should be given a liberal construction in favor of the homestead right, so that one may even claim vacant land as a homestead when he has a bona fide intent of erecting his family dwelling house thereon and such intent is seasonably disclosed to those who have a right to know of the same and to rely thereon. Said section should be so construed that one, occupying a building as his homestead, may still elect, subject to the conditions above specified, to select a vacant piece of land for a home-

stead, be that land separate and distinct from the former homestead or be it but a part of the former homestead. Under the provisions of section 3225, Pol. Code, which reads as follows: "It must not embrace more than one dwelling house or any other buildings except such as are properly appurtenant to the homestead as such; but a shop, store or other building situated thereon and really used or occupied by the owner in the prosecution of his own ordinary business may be deemed appurtenant to such homestead"—one cannot claim more than one dwelling house as a homestead (except, perhaps, in a case where two buildings are actually used together at one and the same time as a home); but this should not prevent a party, upon giving proper notice of his intention, from electing to and from claiming all the former homestead together with the new building, either erected or to be erected, providing the old building is to be used in good faith as a part of the dwelling house or, upon occupancy of the new dwelling, is to be entirely abandoned as a dwelling and to become but one of the outbuildings used in connection with the homestead; but as was said in McMonegal v. Wilson, 103 Mich. 264, 61 N. W. 495, a case quite analogous to this case: "No such liberality of construction of the homestead law is permissible as will entitle the party to two homesteads at the same time, the one actual and the other potential." Measured by these rules the findings are insufficient to support the decree appealed from. It may be that, upon a new trial, the respondents may be able to supply proof of the existence of the missing links that are wanting in the court's present findings.

The decree appealed from is reversed as to all the respondents.

McCOY, J. (dissenting). This case is to be reversed because there was no finding and evidence of intent in relation to the homestead character of a second building placed upon homestead premises. The question of intent is an evidentiary matter and one not necessary to be specifically found. The finding that the entire property, including the new building, was a homestead· includes and is based upon the evidence of intent. It is never necessary to make specific findings of fact upon each and every specific item of probative evidence, but it is sufficent if the ultimate fact is found. An intent may always be inferred from the acts of a party. Men are hung or imprisoned for life upon no

other evidence of intent than that which is inferred from their acts. It appears that the Griffins had a small old house, which by reason of old age and long-continued use had become not well fitted for dwelling house purposes, situated upon their homestead premises of less than one acre. They erected a new house upon the same premises and moved into it when completed and occupied it as their dwelling and for a time temporarily rented the old house. There can be no possible inference from these facts that the Griffins intended to abandon any part of their homestead premises, but the only reasonable inference arising from their acts is that the entire property was their homestead. The effect of the majority opinion is that under these circumstances they are to lose their entire homestead unless they can show some other evidence of intent not to abandon the same. In the first place the burden of proof is not on these defendants to show abandonment. Further, I am of the opinion that a person, the head of a family, who owns homestead premises on which there is an unsuit-' able dwelling house may erect a better dwelling house thereon, if he so desires, without being exposed to the loss of his entire homestead right, where the valuation and area limit fixed by statute are not exceeded. Suppose that when the new structure is erected it is placed immediately against the old so as to constitute a sort of addition thereto, could it be properly held that both structures were not embraced within the homestead premises? Would the fact that the structures happened to be twenty feet apart change the rule? The old building might be used for kitchen, laundry, storeroom, or innumerable other family uses, or it might be rented to raise a little revenue for family uses and still constitute a part of the exempt homestead premises, although the members of the family might actually live, sleep, and eat in the new structure. If the owner of the homestead premises had a well-constructed barn thereon and should rent the same for a dwelling house or for storage purposes for a time, could it possibly be properly held that that would destroy the homestead character of the entire premises? Possibly in some jurisdictions it might affect the homestead character of the barn only and expose it to sale on execution, but it certainly would not destroy the homestead character of the entire premises.

Under the circumstances of this case it seems to me that the

old and new buildings should be treated as component parts of one entire homestead premises. The old building is an appurtenance to the premises. It seems to be generally held that where the homestead property is within the valuation and area limits, and the claimant actually occupies a residence thereon, it does not matter to what use he may put the land or other portions of the premises or what business he may pursue thereon in order to make a living for himself and family. Green v. Richardson, 122 La. 361, 47 South, 682, 16 Ann. Cas. 1037. There is but one homestead premises involved in this case. It is not like a case where the claimant is seeking to mantain two distinct homestead premises with a dwelling on each of them. This case should not be confounded with the double homestead proposition, as there is but one homestead premises herein involved. Again, if the homestead premises contain a superfluity of buildings thereon, the superfluous ones might be subject to execution, without limiting or destroying the area covered by the homestead right, and the court might determine whether such particular building was or was not a part of the homestead. Pol. Code, § 3230. In Hubble v. Canady, 58 Ill. 425, the Supreme Court of Illinois, in construing a very similar homestead statute, said: "We are not to regard the intention of the Legislature as being only to save a mere shelter for the debtor and his family, but that it was the purpose to give him the full enjoyment of the whole lot of ground exempted, to be used in whatever way he might think best for the occupancy and support of his family, whether in the way of cultivating it or by the erection and use of buildings upon it either for the carrying on of his own business or from deriving an income in the way of rent." This Illinois case has been followed and approved in many well-considered opinions for many years. Stevens v. Hollingsworth, 74 Ill. 202; Sever v. Lyons, 170 Ill. 395, 48 N. E. 926; Bartholomae v. Brewing Co., 67 Ill. App. 560; Tenny v. Wessell (Tex. Civ. App.) 26 S. W. 436; Green v. Richardson, 122. La. 361, 47 South. 682, 16 Ann. Cas. 1037, and note. Thompson in his work on Homesteads, §§120 to 145, in considering the case of Hubble v. Canady, says that the broad rule laid down by the Illinois Supreme Court will probably find favor with most of the courts, but that there is an opposition tendency in some jurisdictions. It appears that this opposition tendency is based

solely on the reason that where there is no valuation limit placed on the homestead right, the debtor has it within his power, under the Illinois rule, to perpetuate a fraud on his creditors by constructing very valuable business or other structures upon the homestead premises.  Subdivision 7, § 345, Code Civ. Proc., destroys the reason on which the opposition to the Illinois rule is based. If this was a case where there were valuable buildings constructed on the homestead premises in excess of the value of $5,000, or if we had no statute limiting the value of the homestead, and it appeared that there was an unreasonable amount in value of buildings placed thereon, which would amount to a fraud on creditors, then the majority opinion rule, in a measure, would be very appropriate; but I am of the opinion that there has been a misapplication of this principle in this case present under a statute and under circumstances not warranting the rule, and which has the effect of destroying or limiting the use of the homestead right in a manner never intended by the legislative mind.

The fact that some desire to sell the new building was shown to exist is wholly immaterial, for the reason that the owner of homestead property has the right to sell the same without destroying the homestead right, and however much he might desire to make such sale could not deprive him of his right. I do not believe that a person can be cut out of his homestead right by any such method.  It was the plain duty of plaintiff when he entered into the contract to sell building material to Griffin to ascertain his intentions as to homestead rights.  Plaintiff was bound at his peril to take notice of the homestead character of the premises on which this new building was constructed.  21 Cyc. 552.

In addition, I desire to suggest a conclusion which I think, must necessarily flow from the logic upon which the majority opinion in its main features is founded.  The proposition is there laid down that it is the right of the husband, the head of the family, to select the homestead; that the only limitation upon the exercise of this right is as to area and value; that there is nothing in the homestead law which prevents the husband from selecting a homestead of less area or value than that prescribed by the

statute; that the right vested in the husband to change the homestead involves and includes the right to select a homestead of less area or value than that already occupied by the family; that in the exercise of this right the husband alone may at any time lessen both the area and value of an existing homestead by appropriating some portion of its area or some of the buildings thereon to other than homestead uses. From this line of reasoning and logic it would follow that the husband, by his act alone, may reduce the homestead to the exact area occupied by the dwelling house itself, and lessen the value of the homestead and its area at his will to practically any extent and thus deprive his wife and family of every convenience and comfort of a homestead, with the bare exception of the roof over their heads, the walls, and the floors beneath their feet. If this line of reasoning is a correct interpretation of the law governing homestead rights, of what practical value to the family are those provisions of our statute which forbid the alienation of a homestead once acquired and occupied, except by a deed in which both husband and wife shall join? Why might not the husband, after declaring his intention to abandon a portion of land included within the homestead area, alienate such portion by his own single deed of conveyance? Why may not the farmer who owns a quarter section of land, by his declaration of abandonment and his selection of the single acre of the quarter section, upon which the dwelling house is situated, render the remaining 159 acres subject to alienation by his sole deed or mortgage without the consent of his wife? I cannot concur in any line of reasoning which leads to such results. In my judgment the rule should be, and I think is, that when a homestead has once been selected and is occupied as such, the husband cannot by his sole act abandon some portion of its area or in effect accomplish the same end, through the creation of mechanics' liens or other incumbrances upon some portion of that area, and thus in effect render nugatory the statute which forbids the alienation of the homestead without the wife's consent. I think the judgment and order of the trial court should be affirmed.

From a careful reading of the record it seems to me that there has been a fair trial in the court below, and that the findings and judgment are sufficient to sustain the judgment and

that the judgment should not be reversed. These parties. should not be required to exhaust and eat up the value of their home-stead property in the costs and expense of another trial. This lit-igation should be brought to .an end by an affirmation of the judgment.

SMITH, J., concurs in the view expressed by McCOY. J.