R. D. KING ET AL. v. THE C. M. HAPGOOD SHOE COMPANY ET AL.

Decided May 4, 1899.

**1. Homestead in City Includes What.**

A three-story building occupied by a debtor who uses a portion of it for a boarding house and leases a part for mercantile business, together with so much of a one-story building adjoining as has not been devoted to other purposes, may be claimed exempt as the residence homestead of the occupant.

**2. Same—Separate Building Leased Out.**

A builing leased for a grocery, which adjoins another occupied as a homestead, and to which it is connected by a stairway, does not constitute part of the residence homestead, when the stairway has been separated by a partition wall from the building used for the grocery.

**3. Same—Business Homestead.**

The owner of a one-story building leased it out for a store, reserving a space of twelve feet in the front end of the main room for his office, and which he used some as an office. His business was that of agent for a cotton buyer who had an office in the same city, and it was not requisite that the agent should have an office there. Held, that the claim of a business homestead could not be sustained.

**4. Same—Fraud as Affecting.**

The exemption of a debtor's homestead from execution sale will be upheld, although he therein invested money derived from the sale of goods bought on credit for the purpose of preventing the creditors collecting their debts.

**5. Same—Mechanic's Lien—Property Not Exempt to be First Subjected.**

A debtor has the right, as against his creditor having a mechanic's lien upon his property, including that exempt from execution, to compel the sale of the property not exempt and the application of the proceeds to the discharge of such lien before the sale of his homestead, although there be claims of other creditors unsecured.

APPEAL from Houston.   Tried below before Hon. W. H. GILL.

*John I. Moore* and *G. H. Gould,* for appellants.

*Crook & Crook* and *Aldrich & Lipscomb,* for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—In the year 1895 the appellant R. D. King was a merchant doing business in the town of Crockett, Texas, and in said year erected in said town a brick building of three stories, and also a brick building of one story.   The two buildings were in fact but parts of one structure; the two had one wall in common, and they were connected by a stairway running from the floor of the one story to an opening in the common wall in the second floor of the three-story building.   The buildings were completed in the fall of 1895, and when completed the appellant R. D. King with his family moved into the house, they occupying three rooms on the second floor, while the other rooms on that and on the third floor, with the single story, were leased for a hotel, and the first floor of the three-story house was used by the appellant R. D. King as his place of business.   Previous to this time he and his family occupied a cottage in the town as their homestead, and this was verbally sold in October, 1895, to appellant's father, but no conveyance was made to the property from appellant and his wife until December of that year.   The appellant continued to conduct a mercantile business in the brick building until some time in January, 1896, when he failed and executed a deed of trust on his merchandise for the benefit of certain creditors.   The original lessee of all the building not occupied by King and family as residence and business homesteads surrendered his lease in December, 1895, and the hotel was subsequently conducted by a company of which appellant King was a member.   But in the summer of 1897 the appellant agreed, for a valuable consideration, with other hotel keepers in the town that his house should not be used or rented for hotel purposes, and he continued to reside in the building and took in boarders.   And subsequently the lower story of the building was rented to Mistrot Brothers, who conducted a mercantile business therein, and in September, 1897, the one-story building was leased to one C. W. Ellis for a grocery store, the stairway having been previously separated from the rest of the house by a partition wall.

The appellees, being creditors of the appellant, reduced their claims to

judgments and had abstracts thereof duly recorded in the office of the clerk of the County Court, and these abstracts were so recorded prior to the lease to Ellis; and on the 13th day of September, 1897, appellees brought this suit to subject the above described property to the payment of their judgments. The petition alleged that the appellant R. D. King and his wife, Rena, claimed the property as their homestead, and that such claim is made to defraud creditors, and not in good faith; and that the property is not adapted for the purposes of a homestead, and is not intended by the owner for such purposes, but that said property is adapted, and by the owner intended, for a source of pecuniary profit and income, and as a means of temporarily holding capital to its value, to wit, $9000, in fraud of his creditors; and that said appellant King acquired said property and paid off the incumbrance existing upon it by means of money and goods of which he had defrauded plaintiffs and other creditors. The petition further alleged that the First National Bank of Crockett and one J. B. Smith claim some lien upon said property, and that said bank and said Smith have had in their hands, assigned to them by said King, for the purpose of settling claims against him in their favor, money and property sufficient in value and amount to have paid off all such claims, and satisfied such lien, if any there was; but to aid the said King in defrauding his creditors, said bank and said Smith had colorably kept alive said lien, but in fact their said debt had been discharged and the property released from lien; and plaintiffs pray that Mrs. King, the said national bank and the said Smith, and C. W. Ellis, who, it is alleged, is the lessee of a part of said property, and the said R. D. King, be made defendants and cited to answer plaintiff's petition, and that plaintiffs have judgment foreclosing their judgment liens, and for order of sale, and that if the defendants, the First National Bank aforesaid, or the said Smith, should establish a lien superior to plaintiff's upon said property, that they be required to resort first, for the satisfaction of such lien, to such portion of such property upon which it may be determined plaintiffs have no lien. The defendants King and wife, answered denying the allegations of the petition, and averring that said buildings since their erection had been dedicated by defendants, and by them occupied and used as their residence and business homesteads, and that same were exempt from forced sale. The defendant the National Bank answered that there was yet due it on notes executed to defendant J. B. Smith, and secured by mechanic's lien, and which notes and lien were assigned by said Smith to it, about the sum of $4000; and said bank prayed that it might be protected. The defendants Smith and Ellis each disclaimed any interest in the subject matter of litigation, and each was dismissed.

The cause was tried on the 20th of April, 1898, and the jury, under the instructions of the court, found that the whole of the three-story building was exempt, as a residence homestead, from plaintiff's claim, and that all of the one-story building, save the staircase and the approach to the same, and the landing of the stairway, connecting the latter with the door opening into the second floor of the three-story building, with so

much of the lot as was covered by these several portions of the one-story building, was subject to the plaintiff's liens; and the jury further found that the bank's debt secured by the mechanic's lien was $1588.16, and judgment was rendered foreclosing the liens on the bank and of the plaintiffs; the lien of the latter being declared to be subordinate to the lien of the bank. And it was further adjudged that the bank's lien upon each of said buildings be in proportion to the value of each building to the amount due it; and the respective values of the two buildings were fixed at $1500 and $9000. From this judgment the bank and defendants King and wife appealed to this court.

If there was error in the charge of the court in reference to the claim of homestead by the defendants King, we think the error was harmless, since our conclusion is, that under the evidence before them the jury could not have found otherwise than that the three-story building was the homestead of the defendants King and wife; and that while the one-story building had been once a part of their residence homestead, only so much of it remained a part of the homestead as was not included in the lease to Ellis in September, 1897. When the defendant separated by a partition wall the stairway from the rest of the one-story building, and had such portion fitted up for a store, and rented it to Ellis, he dedicated the property to uses and purposes inconsistent with those of a residence homestead, and that portion of the single story must be considered as having been abandoned, from the time of the lease to Ellis, as a residence homestead. Nor do the facts sustain the defendant's claim of a business homestead. The evidence shows that when he leased to Ellis a space of about twelve feet in the front part of the room was occupied as an office by Edmiston Bros., and in case this space should not be retained by them, then defendant reserved the same for his own business office. The Edmiston Bros. vacated the premises and the defendant occupied this space as his place of business, while Ellis occupied the remainder of the room as a grocery store; the room, minus the space cut off by the partition wall, was 100x25 feet. The business of the defendant at that time was that of an agent for a cotton buyer domiciled in the town, and who had an office there. The evidence fails to show, in our opinion, that the business of the defendant required an office, and we think the room was not the business homestead of the defendant, but was set apart for and rented for commercial purposes.

That the three-story building, and so much of the one-story as had not been devoted to other purposes, constituted the residence homestead of the appellants King and wife there can be no question. They had been occupied and used as their home ever since their completion, their former homestead having been abandoned and subsequently sold; and the lots on which the two buildings were erected were, unimproved, of less value than $5000. As to the motive of the defendant King in changing his homestead, or as to the manner in which he acquired the property, the source from which the money came which paid for the improvements, and as to his intention or purpose of devoting the property to other uses than those

of a resident homestead, were not legitimate inquiries, and the court did not err in ignoring them. The contention of appellees' counsel as to these matters is without support, we think, in the decisions which they cite in their interesting brief. The exemption from forced sale of the homestead of the family is founded upon public policy, and must be upheld and enforced, notwithstanding the fact that it sometimes indirectly assists a dishonest debtor in wrongfully defeating his creditors in the collection of their just dues. To invest money derived from the sale of goods bought on credit, and which have not been paid for, in exempt property, for the purpose of preventing the investor's creditors from collecting their debts, is conduct which all honest men must condemn; and yet it is a wrong for which the law affords no remedy of which we are cognizant. This is not the case of a debtor who attempts to change his homestead by removing to property upon which his creditor has acquired a lien by levy of execution, or by recording his judgment against the debtor. In such cases the homestead exemption can not be asserted to the destruction of vested rights previously acquired by the creditor. Nor is this case analogous to that of Kinkle v. Bohnke. In that case the homesteader was held estopped as against his vendee with warranty of title. The difference between the relation of vendor and vendee and that of a homesteader and his judgment lien creditor is manifest. In the first the homesteader may be estopped, and in the second he can not.

The court did not err in instructing the jury that the mechanic's lien held by the defendant the First National Bank could be enforced as against the plaintiffs to the extent only of the amount due upon the notes of defendant King executed to Smith, and by him assigned to the bank, after crediting the amounts paid by King on said notes, with 10 per centum interest upon such amount, from the reduction of the debt by said payments.

The defendant King requested the court to require the bank, in the enforcement of its lien, to sell first that portion of the property which was not exempt from forced sale, and this, as we have seen, the court refused to do; and in this we think the court committed an error for which the judgment must be reversed. Under the authority of Pridgen v. Warn, 79 Texas, 588, we are constrained to hold that it was the right of the defendant King to have the property not exempt from execution sold and the proceeds applied to the discharge of the mechanic's lien, before selling the homestead. The judgment will therefore be reversed, and judgment here rendered such as should have been rendered by the trial court.

*Reversed and rendered.*