**POSTAL SAVINGS & LOAN ASS'N et al. v. POWELL et al.**

No. 2466.

Court of Civil Appeals of Texas. El Paso.

Dec. 24, 1931.

Rehearing Denied March 3, 1932.

344

Carter & Berwald, of Dallas (Elihu E. Berwald and Lee G. Carter, both of Dallas), appearing on appeal.

J. E. Whitehead, of Dallas, for appellant Postal Savings & Loan Association.

Vern D. Adamson, of Dallas, for appellant Johnson.

Goggans & Allison, of Dallas, appearing on rehearing for Postal Savings & Loan Association.

Ballowe & King, of Dallas, for appellees.

PELPHREY, C. J.

Appellees, D. F. Powell and wife, Susie Powell, and W. M. Brooks and wife, Annie Brooks, instituted this suit against Palmer Haworth, J. E. Whitehead, G. W. Johnson, and the Postal Savings & Loan Association, for cancellation of a mechanic's lien and note given by them to G. W. Johnson, and of a deed of trust and note in favor of the Postal Association in which Palmer Haworth was named as trustee, to remove cloud cast upon their title to properties mentioned in said instruments and to restrain appellants from asserting any right, title, or interest in said properties by virtue of such asserted liens.

Appellees, in their second amended petition, upon which the case was tried, alleged the execution by them of a contract with appellant Johnson for a "turnkey" job for a consideration of $20,000, for which they executed a mechanic's lien note in his favor; that the contract provided for a written acceptance of the building by them; that the mechanic's lien note was assigned to appellant Postal Savings & Loan Association; that the mechanic's lien contract and note were void, being on the homestead of appellees and not being acknowledged by Susie Powell and Annie Brooks, with the formalities required by law; that such instruments created no lien on appellees' property because the notary's acknowledgment fails to show that the wives of appellees had declared that they had signed them for the purposes and consideration therein expressed and did not recite that each of them had declared that she did not wish to retract it; that the said mechanic's lien contract and note are also void and unenforceable because of the failure of appellants to comply with the contract to construct the building in accordance with the contract (pointing out particulars in which they failed); that appellees had never executed a written acceptance of the building, but had taken possession thereof relying upon the promise of appellants to complete the building as per contract; that all of appellants except Palmer Haworth were actuated by bad faith and fraudulent intentions, and acted with a view of overreaching appellees, thereby entitling them to $1,000 punitive or exemplary damages; that the provisions calling for appellees to pay for insurance on the property and for the payment of attorney's fees are void, the property being the homestead of appellees and not subject to having liens for such charges fixed thereon; that appellant Whitehead, by representing to appellees that it was necessary for them to furnish additional information as to their financial standing and to make an application for a loan to refinance the building when completed, fraudulently induced them to sign a deed of trust note for $29,000, including property other than that covered by the mechanic's lien contract and note; that in so doing he acted for himself and as agent of the Postal Association; that the said deed of trust and note are void because covering the homestead of appellees, the signature of appellees thereto having been secured by such fraudulent representations and because said instruments were not explained to the wives, Susie Powell and Annie Brooks, by the notary taking their acknowledgments thereto; that there was a failure of consideration as far as said deed of trust and note were concerned, the Postal Association not having paid off the liens on the homestead, not having paid the taxes thereon, not having paid the $10 called for in said deed of trust, and having failed to construct the improvements in accordance with the contract; that the Postal Association knew that the work on the improvements had barely commenced, if at all, at the time it accepted the benefits of the deed of trust for $29,000; that the mechanic's lien contract and note were not negotiable, and that if the Postal Association received same as recited in the transfer from Johnson it took the subrogated part thereof with full knowledge of the terms of the building contract and subject to all the rights of appellees; that Whitehead, for himself and on behalf of his then undisclosed principal, the Postal Association, jointly with Johnson constructed the improvements on the homestead; that Whitehead, out of his own funds, the funds of the Postal Association, or other funds, paid for all the labor and material used in the building; that Whitehead, the Postal Association, and Johnson, were jointly interested in the construction contract for their mutual profit and actually constructed such improvements as were placed on the property of appellees; that Whitehead, Postal Association, and Johnson all fraudulently conspired to defraud appellees in furnishing insufficient and inadequate material for the proper construction of the improvements and in deviating materially from the plans

and specifications and to, by tricks, acquire mortgages and liens on all their property; that in pursuance with such conspiracy Johnson, notwithstanding his failure to complete the improvements as per contract, demanded of appellees $7,000 for extras; and Whitehead and Postal Association demanded the payment by appellees of $35,822.72, and the execution by appellees of additional security on other property owned by them in Dallas county; that appellant threatened to file suits and did file suits on the deed of trust in Harris county, in an attempt to intimidate appellees into mortgaging all their property to pay the first lien indebtedness of approximately $12,000, and to pay for the improvements; that the suit is brought for the purpose of ascertaining what is due appellants on a quantum meruit basis; that no lien existing against appellees' property, they are liable to appellants only for the value of the labor and materials necessary to duplicate the improvements as they exist, and prayed for their damages, as alleged, be credited against any amount due appellants on quantum meruit.

The Postal Association answered by general demurrer, special exceptions, a general denial, admitted its corporate existence, the execution of the mechanic's lien contract; denied that the contract pleaded by appellees was the contract entered into between appellees and Johnson, and alleged that if so it had been materially altered by one or more of appellees; denied that the property covered by the mechanic's lien contract was the homestead of appellees; alleged that the building constructed by Johnson was a new building and had never been occupied by appellees until after its completion; that appellees, by using the property as a hotel for colored people, and mainly for immoral purposes and in violation of law, were estopped from asserting its homestead character.

By way of cross-action the Postal Association further alleged that appellees approached appellant Whitehead and made application for a loan on all the property owned by them, and represented to him that they needed the money to pay then existing debts upon said real estate and for the purpose of constructing an addition to the Powell Hotel, and that $29,000 would be sufficient for such purposes; that they owned six different tracts of real estate in Dallas, some owned by them jointly and some owned separately by appellee Brooks; that they were solvent; that they furnished Whitehead with the plans and specifications of the proposed addition to the hotel; that Whitehead, after inspecting the plans and specifications and investigating the sufficiency of the security, instructed appellees to secure a contract to erect the improvements in accordance with the plans and specifications; that thereafter the contract was made with Johnson to erect the improve-ments for $20,000, and appellees requested the Postal Association to accept an assignment of the mechanic's contract and lien from Johnson representing to Whitehead that the note was free and clear from all defenses; that Johnson was their contractor; that they would supervise the construction of the building; that they had executed the mechanic's lien contract in good faith and that same was valid and binding; that the property was not their homestead, but that they each owned other property which they were using, claiming, and occupying as their homesteads; to induce the Postal Association to accept an assignment of the note and finance the construction of the building, they represented to Whitehead that they would assert no homestead claim to said property during the existence of the indebtedness; and that the Postal Association, relying upon such representations, accepted the assignment from Johnson.

It further alleged that appellees at all times supervised the construction of the improvements and never complained of either the workmanship or materials until after the work was completed and until the installments for repaying the loan secured by Postal Association's deed of trust began to mature; and that the objections now made to the manner in which the improvements were constructed, and the defects now urged to the execution of the mechanic's lien contract and note and to the deed of trust, are made for the purpose of defrauding the Postal Association and Johnson.

Postal Association prayed for a foreclosure of its deed of trust for $29,000 less a credit of $9,000, together with $2,000 attorney's fees, and for judgment against Johnson for $20,000 on his indorsement of the mechanic's lien note.

Appellant G. W. Johnson answered by general demurrer, special exceptions, a general denial, alleged the execution of the building contract with appellees for the construction of the addition, the execution by appellees of the mechanic's lien and note covering the whole lot upon which the property was located; that said mechanic's lien and note were executed and duly acknowledged by Powell and Brooks and their wives, said acknowledgments of Mrs. Powell and Mrs. Brooks being taken privily from their husbands; that appellants agreed to finance the building and to arrange for him to get the money upon the note by a transfer thereof; that pursuant to such agreement and arrangements made by appellees with the Postal Association, he indorsed the note to said Postal Association and thereby became liable for its payment; that he constructed the building in accordance with his contract and the directions and commands of appellees, and that each of them is estopped by their conduct to assert nonperformance and to deny liability on said note,

or the validity of the mechanic's lien; that appellees accepted the said building and approved its construction and cannot now be heard to dispute their liability on said note. He, for further answer, admitted the making and execution of plans and specifications for the building, but denied that the copy thereof attached to appellees' petition was a correct copy thereof, and alleges that the copy attached has been materially altered and changed and does not reflect the correct plans and specifications for the building and tendered a true copy thereof in evidence.

He further alleged that he sold and assigned the mechanic's lien note at the request and with the consent of appellees to the Postal Association, leaving him with no right, title, or interest therein save and except that he has guaranteed payment thereof by his endorsement; that at the time of the execution of the mechanic's lien note appellees knew that he was not financially able to construct the said building and that he must depend upon them to finance same, and they made their own arrangements for the financing thereof, and that he sold and assigned said note and contract pursuant to their directions and instruction, thereby estopping them from disputing the note or any portion thereof; and that by authority of appellees he did and performed certain extra work not called for in the building contract aggregating the sum of $9,170.

He prayed judgment for that amount, that it be made a lien against the property, and that the property be sold to satisfy said judgment.

Upon ninety-six special issues submitted by the court, the jury found: (1) That appellees and Johnson entered into an agreement for the construction of the addition according to the terms of the contract, specifications, and "Lewis plans"; (2) that Johnson agreed to do the work in accordance therewith for $20,000; (3) that the Postal Association, through its president, represented to appellees that the $29,000 note and deed of trust was a mere application for a loan to the Midland Building & Loan Association; (4) that such representations were false; (5) that appellees relied thereon; (6) that the Postal Association, through its president, represented to appellees and their wives that the deed of trust note and deed of trust was a financial statement with the fraudulent intent to induce them to sign it; (7) that appellees relied thereon; (8) that the Postal Association, through its president, falsely represented to appellees and their wives that the application for a loan to the Postal Association was an application to the Midland Building & Loan Association; (9) that appellees relied thereon; (10) that the Postal Association, through its president, falsely represented to appellees that the instrument, which purported to be an application to the Postal Association for a loan and to purchase the $20,000 mechanic's lien note, was a financial statement; (11) that appellees relied thereon; (12) that the notary in taking the acknowledgment of Susie Powell and Annie Brooks to the mechanic's lien did not fully explain the instrument to each of them apart from their husbands; (13) that they each acknowledged the mechanic's lien to be the act of each of them, that they had willingly signed the same, and did not wish to retract it; (14) that the Postal Association had knowledge that the notary in taking their acknowledgment to the mechanic's lien contract did not examine them privily and apart from their husbands; (15) that the acknowledgment of Susie Powell and Annie Brooks to the deed of trust was not taken privily and apart from their husbands and it was not explained to them; (16) that they did not each acknowledge to the notary that such deed of trust was her act and deed, that she had willingly signed the same for the purposes and consideration therein expressed, and did not wish to retract it; (17) that appellant Johnson did not construct the building in substantial compliance with the contract; (18) that the reasonable cost of completing the building according to plans and specifications would be $3,762.44; (19) that the Postal Association through its agents conspired with, aided, and abetted Johnson in not substantially complying with his contract; (20) that the Postal Association and Johnson fraudulently conspired together with the intent to give appellees inferior material and labor for the construction of the addition and to fraudulently obtain mortgages and liens on their property; (21) that Johnson did not construct any extras on the addition; (22) that Johnson failed to furnish the materials called for and to do the work in a workmanlike manner (finding the several items and the damage to appellees for each item); (23) that neither Johnson nor the other appellants informed the Postal Association that the acknowledgments of appellees' wives were not taken privily and apart from their husbands; (24) that the Postal Association did not pay a valuable consideration for the assignment to it of the mechanic's lien and note; (25) that the Postal Association did not pay the purchase price of said note and lien after the acknowledgments were taken; (26) that the acknowledgments of Susie Powell and Annie Brooks to the mechanic's lien contract and deed of trust were not taken separate and apart from their husbands; (27) that the Postal Association was guilty of fraud in procuring the mechanic's lien and note, the deed of trust note, and the deed of trust; (28) that appellees executed and delivered to the Postal Association the loan contract in evidence; (29) that the Postal Association relied upon the representations and warranties therein; (30) that appellees did not induce the Postal Association to purchase from

Johnson the mechanic's lien note for $20,000; (31) that neither appellees nor Johnson had advised the Postal Association that the city required that the addition be built with solid brick walls and a fire escape, before the deed of trust was executed; (32) that after the city had refused a permit, appellees agreed to substitute solid brick walls and a fire escape; (33) that appellees did not instruct Johnson to build solid brick walls and a fire escape as extras; (34) that Johnson did not pay for the building permit; (35) that under the contract Johnson was to pay for the permit; (36) that appellees did not accept the building when it was tendered them, and that Johnson was guilty of fraud in procuring the execution of the mechanic's lien contract and note and the deed of trust and was in collusion with the Postal Association in procuring their execution.

On December 7, 1929, judgment was rendered in favor of appellees against Johnson and the Postal Association, jointly and severally, for $3,587.44, canceling the mechanic's lien contract and note, canceling the deed of trust and note for $29,000, removing clouds cast upon appellees' title by reason of the above instruments, and quieting the title of appellees to the property described therein; that the Postal Association take nothing by its cross-action; that Johnson take nothing by his cross-action; that the suit as against Whitehead be dismissed; that appellees take no personal judgment against Palmer Haworth, and canceling the loan contract.

On February 10, 1930, an order overruling appellants' motions for a new trial was entered as of February 8, 1930, striking from the judgment the $3,587.44 awarded appellees.

Both Johnson and the Postal Association have appealed.

### Opinion.

The brief of Postal Association contains 250 assignments of error and 77 propositions, while Johnson's contains 122 assignments and 42 propositions.

We fail to see how a trial court could possibly have committed such a great number of reversible errors, and feel that appellants' attorneys who were familiar with the facts adduced and the rulings of the trial court could have simplified the work of this court immeasurably by presenting only the controlling questions.

The cause has been under submission for several months, which fact we regret; but in view of the confusion injected into the case by appellants, it has been impossible for us to earlier decide it.

We shall not attempt to discuss in detail the multitude of questions presented, but shall limit our discussion to those questions which, after a lengthy study of the record, we consider should control.

Several of the assignments presented by appellants are related to the question of homestead.

■ Appellant Johnson attacks the sufficiency of the petition to assert a homestead interest in the property, contending that it fails to allege the marital status of appellees and their wives at the time the indebtedness was incurred; that it fails to allege that they were occupying the property as their homestead at that time; that there is no allegation that the lot did not exceed $5,000 in value at the time the indebtedness was incurred; and that it failed to sufficiently describe the property.

Paragraph 2 of appellees' second amended petition reads: "Plaintiffs, Susie Powell and D. F. Powell, are husband and wife, and plaintiff W. M. Brooks and Annie Brooks are husband and wife and are each of them living respectively as such at 3115 State street in Dallas, Dallas County, Texas, and the property at said address, which is hereafter more fully described is the homestead of the plaintiffs, and they are now and have been for a long time prior to the occurrence of any of the events hereinafter alleged, using and enjoying said premises as their sole and only homestead. * * *"

Paragraph 5 reads: "Plaintiff alleges that the real estate described in Exhibit 'C' is the same property as that at 3115 State Street, and is the homestead of the plaintiffs as above alleged, and said Exhibit is here referred to for an accurate description of said real estate."

Exhibit C is the agreement entered into between appellees and Johnson for the erection of the building in question and describes the property as "a part of lots 6, 7 and 8, Block 581, of the City of Dallas, Dallas County, Texas," and more particularly describes the property by metes and bounds.

Johnson refers us to pages 121, 122, of the transcript for the special exception which he contends was erroneously overruled. An examination of the record reveals that the exception there found was filed by appellant Postal, who has here made no complaint of the court's action in that respect. From the judgment it appears that certain enumerated special exceptions were overruled by the court in the second amended petitions of appellants.

Johnson's second amended petition contains no special exception to the allegations as to homestead. Even if we should allow Johnson to use the special exception of Postal as a basis for his assignment, it would present no error. From the portion of the petition above quoted we think it was clearly not subject to the objections urged.

■ Both appellants further contend that the petition was subject to demurrer because of the fact that it prayed for both rescission of the contract and to recover damages for its breach. The petition of appellees, after the allegations heretofore recited, concluded with the following prayer: "Wherefore, premises considered, and the defendants having answered herein, plaintiffs pray that they have judgment against the defendants jointly and severally for their damages, and that any such sums of damages as are necessary which may be allowed them, be credited by decree of the court as a payment upon what they are legally, equitably and lawfully due to defendants and that the court determine the amount due the defendants by quantum meruit and give them judgment therefor, and that the mechanic's lien note, mechanic's lien, Deed of Trust note, and Deed of Trust above mentioned be cancelled, set aside, and held void; and that all clouds upon the titles of their property be removed, and that the defendants and each of them be perpetually enjoined from asserting any rights, interest or title under said liens, and that plaintiffs have judgment for their costs incurred and that they be granted such other and further relief, legal and equitable, general, special to which the law and the facts may justly entitle them and for which they will ever pray."

It is apparent that the prayer was not to recover on the contract for its breach, but was to offset damages which they allege were suffered by them against any amount allowed appellants on a quantum meruit basis. The contention is, we think, untenable and the assignments must be overruled.

■ Postal's twenty-third proposition reads: "Plaintiff, in order to resort to equity, must show that he has no adequate and complete legal remedy, and such allegations are jurisdictional and are not met by mere statement of conclusion." This proposition Postal claims was copied from the syllabus of Palmer et al. v. Marshall et al. (Mo. App.) 24 S.W. (2d) 229. An examination of that case reveals that it was a suit in the nature of a bill in equity for an accounting, and the court held that the petition stated no cause of action against appellant because there was no allegation therein showing any fiduciary relation, any statement sufficient to provoke a trust, or to constitute them trustees ex maleficio of any property or its proceeds. Appellees were suing to recover certain property or its proceeds which their agent had conveyed to Waldo C. Peterson and by him mortgaged to appellant. In the case at bar appellees sought cancellation of certain instruments affecting their property on the grounds of fraud, that it was their homestead, and that the building contract had not been substantially performed, etc. We know of no action at law by which this result could have been accomplished.

■ The next question which presents itself is whether or not the facts here show the property in question to be the homestead of appellees, for upon a decision of that question depends the right of appellant Postal to assert its lien on the property.

If the property here was not the homestead of appellees and Postal was an innocent purchaser of the mechanic's lien and note before maturity, then it would be entitled to foreclose the lien assigned to it by Johnson regardless of Johnson's failure to substantially perform his contract with appellees; but, on the other hand, if the property was the homestead of appellees, there could be no lien unless the contract upon which it was founded was substantially performed by Johnson, and Postal would be in no better position than Johnson in collecting on the contract, or in foreclosing a lien fixed thereby.

In the case of Murphy et ux. v. Williams, 103 Tex. 155, 124 S. W. 900, 902, Williams brought suit against Murphy and wife on three notes aggregating $3,200, given by Murphy and wife to C. W. Arend as part of a building contract between them and Arend, under which certain building and improvements were to be erected upon a triangular lot in El Paso, and as consideration for said improvements. The notes were by the contract secured by a lien on the lot and improvements, and also on three other lots (not homestead) in El Paso. The facts, as found by the trial court, were: "Murphy and wife owned the lots and wanted to build on the triangular lot, had no money with which to do so, and entered into the builder's contract with Arend for that purpose, and in connection with it executed their three negotiable notes to him, aggregating the contract price of $3,200. Said contract was duly acknowledged and duly filed for record on same day, October 6, 1904. It was at the time agreed between the parties that Arend was to sell or discount the notes at once, in order that Arend would be enabled to perform the contract, and that the notes would be purchased by Williams and the plaintiffs in error in their contract so provided, and that the proceeds thus procured would be used in the erection of the building. On the same day Arend indorsed the notes, assigned the lien to Williams, who paid to Arend the sum of $2,300 for said notes and lien long before Arend abandoned his contract, and, upon his abandonment, Murphy and wife demanded of Williams that he complete the building and Williams refused. Murphy and wife took no bond from Arend, and Williams did not contract to carry out Arend's contract. Arend immediately began the work, and used the money which he obtained from said notes in the improvements on the triangle. He put

in the foundation, the walls, roof, floors, part of the plastering, roughed in a part of the electric wiring, put in the window casing, and had a number of doors and windows on the ground ready to put in, when in November he abandoned the contract without any fault of plaintiff in error. A few days thereafter Murphy and wife took possession, and had the remainder of the work practically finished through other parties, and they have since occupied it as their home. What was done by Arend was in substantial compliance with his contract. There was no agreement between any of the parties that Williams should undertake in any way to carry out said contract, or to see that the building was completed, or that the money paid by him was applied on the building, but Murphy and wife were to look to Arend for all this. The only connection Williams had with the matter was the purchase of the notes and lien to enable Arend and plaintiffs in error to get the money to erect the building. Murphy and wife never paid anything on the notes and refuse to do so. Up to the abandonment by Arend he had furnished material and labor in the construction of the building to the amount of $2,115.39. The contract price was $3,200 and the reasonable cost of completing the building after its abandonment by Arend was the sum of $1,550."

The trial court gave Williams judgment for the notes in full and for foreclosure of the lien with order of sale on the three lots, and also foreclosure of the lien against the homestead lot for the sum of $1,650; that being the difference between the contract price, $3,200, and the amount found necessary to complete the improvements under the contract after the abandonment by Arend, $1,550, which was exclusive of interest and attorney's fees. The Court of Civil Appeals, 116 S. W. 412, affirmed the judgment of the trial court. Upon appeal to the Supreme Court the judgment was affirmed except as to that part which awarded Williams a foreclosure of the lien upon the homestead. That court, in passing upon the right of Williams to a lien on the homestead, had the following to say: "We therefore agree with the Court of Civil Appeals that Arend had no lien upon the homestead to secure the value of the labor and material which he put into the building. That court thought the case was different as to Williams, but we are unable to concur in that opinion. Williams may be an innocent purchaser of the notes, so that no defense against them can be made available by Murphy, the only person liable upon them. As such purchaser he would be entitled to the benefit of any lien that might exist on the homestead to secure them, but whether or not such a lien exists must depend upon the effect which the law gives to the contract for the improvement and what was done under it. No such lien can exist on the homestead without compliance with the constitutional provision. The debts of this kind to which that provision allows the homestead to be subjected are, 'for work and material used in constructing improvements thereon,' and for them only when 'contracted for in writing with the consent of the wife,' etc. And the lien to secure such debt is declared to be for ' * * * improvements thereon as hereinbefore provided,' which plainly means improvements actually made by the use of the work and material. Both the contract and the employment of the work and material upon the homestead in compliance with it are thus made essential to the lien. It is evident, therefore, that an assignment of notes, given for the price to be paid for an improvement yet to be made and of the rights of the contractor under his contract therefor, passes no existing lien, but only the right to such as may be perfected by the subsequent performance of the contract. * * * No agreement can change this, because the lien thus provided for is the only one which the parties are allowed to impose upon the homestead, and it can be imposed in no other way than by the concurrence of the prescribed conditions. Although the contract had been made when Williams bought the notes, and he acquired the right to look for security to such lien as might arise from the making of the improvement in future, it was still essential to the perfecting of that lien that Arend's contract be performed, and hence it could not vest in Williams any more than it could vest in Arend without such performance. To fall back upon the agreement that Williams should buy the notes and have the lien merely begs the question. No agreement with Williams or for his benefit could give rise to a lien upon the homestead without a contract for the work and material and the performance thereof. The requirement that the work and material be put into an improvement be first contracted for necessarily implies that it is that which is contracted for that is to be done in order to give the lien, and that the doing of that which is substantially less than or different from the thing so contracted for does not meet the requirement. The Constitution does not prescribe the form or substance of the contract further than stated, but when it says that a contract must be made for the work and material, and that the lien is to be for an improvement thereon, it plainly contemplates that the improvement, or the work and material, as the case may be, that is furnished, must be in substance that which has previously been agreed upon; and it follows that this is not met by an agreement for a house of a specified construction, and the furnishing of only part of the work and material entering into such construction. Williams bought the notes before the contract was performed, and his lien depended upon the performance either by Arend or himself

of that which Arend had undertaken to do to create or perfect it. With respect to it his position is no better than Arend's would be."

We have quoted extensively from the above decision because we think what was there said disposes of several contentions advanced by appellants.

We now come to the question of whether or not the property here was the homestead of appellees at the time the indebtedness was incurred.

■ We are, at the beginning of our consideration of this question, met with the contention of appellants that the property being partnership property of Powell and Brooks, no homestead rights in favor of the members of the partnership could attach.

Appellants, in support of their propositions, cite us to Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, error refused; Moore v. Steele, 67 Tex. 435, 3 S. W. 448; and Oliphant v. Markham, 79 Tex. 543, 15 S. W. 569, 23 Am. St. Rep. 363. If we properly understand the holding in Williams v. Meyer, it is to the effect that one partner, without the consent of the other, cannot select his homestead out of the partnership property in an irregularly shaped tract, which will take in all the improvements on two tracts, but that one partner who builds a house and resides on partnership lands may, as against the firm creditors, select a homestead therefrom, including his house and other improvements. The opinion in Moore v. Steele, supra, has nothing to say relative to homestead rights in partnership property, and the same is true of the holding in Oliphant v. Markham, supra. The cases are devoted to questions involving the rights of partners.

The first case we have been able to find in which the question whether a homestead could be claimed in partnership property is that of Swearingen & Garrett v. Bassett, 65 Tex. 267, and there the Supreme Court held that such right existed. In disposing of the question the court said: "In the absence of definitive legislation to guide us, and in obedience to the progressive tendency adverted to, we hold, against the preponderance of authority, but with the preponderance of reason, that a partner in a solvent firm may destinate his interest in partnership realty as a part of his homestead, and thus secure it from forced sale. * * *" The above holding has been consistently followed by our courts. Gordon v. McCall, 20 Tex. Civ. App. 283, 48 S. W. 1111; Williams v. Meyer (Tex. Civ. App.) 64 S. W. 66, error refused.

Postal presents the following proposition: "The petition and evidence in this case which is a suit to cancel a lien upon an alleged business homestead, showing that the property upon which the lien is sought to be cancelled is used by plaintiffs as a rooming house, that it is not occupied by the plaintiffs personally, but by roomers who must make reservations before occupying the same, the renting of rooms not being a pursuit of a calling within the meaning of the constitution exempting property as a homestead, it was reversible error for the court to refuse defendant's request for peremptory instructions in its favor."

This same proposition is advanced by appellant Johnson, and they also unite in contending that the evidence showing that the property was the residence homestead, that a part was set apart for the purposes of, and improvements erected thereon to be used as a place of business, an abandonment of that part as the residence homestead was manifested; that the character of business homestead could not attach until the property was used and occupied as a place of business; and that the debt and lien having been created before the property was so used and occupied, such liens could not be avoided on the ground that the property was exempt.

■ Upon consideration of the first proposition, two questions naturally arise, viz.: (1) Can the head of a family claim as his residence homestead property in which he conducts a rooming house or hotel? (2) Is the running of a rooming house or hotel the exercise of a calling or business so as to render property where such rooming house or hotel is conducted exempt as a business homestead?

In 29 Corpus Juris, § 57, at page 808, it is said: "While there is some authority to the contrary, according to the weight of authority, premises which are used by the owner for the purpose of a hotel or lodging house are exempt as his homestead where he also resides there with his family."

The Supreme Court held in Forsgard v. Ford, 87 Tex. 185, 27 S. W. 57, 25 L. R. A. 155, that the constitutional exemption applies to the lot and not to the improvements, and that if a lot is used as a residence of the family, it thereby becomes impressed with the homestead character, and that a part of the building used for other purposes could not be sold separate from the lot. That case was followed by the Galveston Court of Civil Appeals in Tyler v. Thomas, 297 S. W. 609, in which it held that a surviving husband was entitled to claim his homestead right in property consisting of a lot on which a building containing four apartments had been erected, even though he and his wife had only occupied one of the apartments and had rented out the other three.

In King v. C. M. Hapgood Shoe Co., 21 Tex. Civ. App. 217, 51 S. W. 532, 534, King had built on his land a three-story and a one-story building, adjoining; occupied part of the three-story building, and leased the remainder for a hotel, and afterwards occupied the whole building as a home, except the

ground floor, which was rented out for mercantile purposes. The court held that the three-story building was exempt as a residence homestead. In its discussion the court said: "That the three-story building, and so much of the one-story as had not been devoted to other purposes, constituted the residence homestead of the appellants King and wife, there can be no question. They had been occupied and used as their home ever since their completion."

In Harle v. Richards, 78 Tex. 80, 14 S. W. 257, 258, E. Harle, the deceased husband of appellant, S. E. Harle, purchased block 390 in the town of Savoy and built a house on it, which he occupied with his family as a home until the house was destroyed by a cyclone in 1880. During that year he built a house on the east half of the block, which he and his family occupied as a residence and also carried on the hotel business therein. Soon thereafter he built a storehouse on southwest lot No. 29, of block 390, and opened a grocery business there. The buildings were so occupied and used for several years, the residence being used as a hotel under the management of Mrs. S. E. Harle, while her husband conducted the grocery business in the storehouse, when the family moved from the residence into the back end of the storehouse and the residence was rented as a hotel.

E. Harle died in 1886, leaving a widow, Mrs. S. E. Harle, and three children. After his death Mrs. Harle closed out the business and went to live with her son, but, as she testified, with the intention of returning and occupying the hotel property as her residence and conducting a millinery business in the storehouse. The court said: "At the time E. Harle occupied the residence or hotel property with his family as their home, and carried on business in the storehouse, both pieces of property were homestead, under the constitution and laws of this state."

By virtue of the above holdings we think it clear that the first question should be answered in the affirmative.

We find that our Supreme Court has defined the words "calling" and "business" as used in the Constitution, as follows: "The words 'calling' and 'business' are evidently used in the Constitution in a very broad sense when taken together, but the signification of each one is uncertain; yet we are to infer that they were not used to designate the same thing. Taken together, they certainly embrace every legitimate avocation in life by which an honest support for a family may be obtained." Words and Phrases, Second Series, vol. 1, p. 554.

The record here shows that the original building occupied by Powell and Brooks and their wives was a two-story brick veneer building containing ten rooms upstairs and about eight downstairs, with the kitchen, and that the families occupied the whole lower floor for living purposes. The upstairs rooms were rented out to roomers; the building had a sign designating it as the "D. F. Powell Hotel"; a register was kept; rooms were rented to any one desiring them by the day, week, or longer; stationery was kept for the accommodation of guests; and, when notified, meals were prepared for them.

These facts, in our opinion, are sufficient to show that such a business was being conducted on the property as would be exempt under the definition above quoted.

Appellants cite Lyon v. Files, 50 Tex. Civ. App. 630, 110 S. W. 999, as authority for the proposition that the renting of rooms was not the pursuit of such a calling, or a business as was contemplated by the Constitution. The facts before that court, however, were quite different from those here present, and the holding there would not justify an extension of the rule there announced to the present case. The court, in that case, while emphatically holding that the renting of rooms was not a "calling," limited their holding that it would not be a "business" to the facts of that particular case. We, therefore, must conclude that the facts here were sufficient to exempt the property either as a residence or business homestead.

If the property was the business homestead of appellees, then certainly an addition made to the building to be used in increasing the volume of the business would be exempt as well.

Conceding, however, that the property was only the residence homestead and that part of it was set apart for the purpose of using it for a place of business, it would still be exempt prior to its actual use, where it appears that the owner, as head of a family, was entitled to the homestead; that he intended to so use it; and that his intention has been manifested by such acts as amount to a reasonably sufficient notice of that intention. Wolf v. Butler, 8 Tex. Civ. App. 468, 28 S. W. 51; Foley v. Holtkamp, 28 Tex. Civ. App. 123, 66 S. W. 891. It is well settled that the principles governing the residence homestead and the business homestead are the same. Wolf v. Butler, supra; Security Mortgage & Trust Co. v. Caruthers, 11 Tex. Civ. App. 430, 32 S. W. 837; Hargadene v. Whitfield, 71 Tex. 482, 9 S. W. 475.

That the doctrine above announced applies to residence homesteads is settled beyond dispute.

This proposition places appellants in the position of contending, on the one hand, that the evidence is sufficient to establish an abandonment of the residence homestead in the land occupied by the new building, but that it is insufficient to impress it with the business homestead character.

We are referred to Pfeiffer v. McNatt, 74 Tex. 640, 12 S. W. 821, and O'Brien v. Woeltz, 94 Tex. 148, 58 S. W. 943, 59 S. W. 535, 86 Am. St. Rep. 829, in support of the propositon. We have carefully studied these cases and find nothing in them challenging the doctrine laid down in Wolf v. Butler, supra. In the Pfeiffer Case the court merely held that the fact that two houses were connected by an archway through the partition wall between them would not invest both of them with the homestead character where both of them were not necessary in the carrying on of the business. In the O'Brien Case the court held that a business homestead could not be acquired by intention to subsequently use it as a place of business, while the owner was still occupying another place as his business homestead.

■ The presumption is that facts which establish a homestead right continue until the contrary is shown. Lauchheimer & Sons v. Saunders, 97 Tex. 137, 76 S. W. 750. And a person seeking to subject property to his claim on the ground that it has been abandoned has the burden of establishing such abandonment. Harle v. Richards, supra, and such issue should be presented by his pleadings. Thomas v. Tyler (Tex. Com. App.) 6 S. W.(2d) 350.

Appellants here pleaded no abandonment and did not request the submission of any issues on that question. Appellants also contend that appellees by accepting, occupying, using, and enjoying the improvements are estopped from rescinding the contract; that by reason of the recitals in their application that Johnson was appellees' contractor, that Postal would not be held responsible for any act or failure on his part, and that Postal should not be responsible for the character of the work done or material furnished by him, appellees are estopped to assert the invalidity or a defense of any kind to the note and mechanic's lien; that appellees owning the homestead and having no money to improve same, and having employed Johnson to make the improvements giving him a mechanic's and materialman's lien on the property, and having agreed that Johnson should sell the note and lien to Postal to obtain the money with which to make the improvements, Postal had a lien on the homestead to the extent of the advancements made to Johnson; and that by virtue of the recitals in the application for a loan made to Postal and having thereafter moved into the property, thereby accepting it, and operating it as a rooming house, they estopped themselves from asserting any defense to the deed of trust note and lien.

We are of the opinion that all of the propositions are answered in Murphy v. Williams, supra; Robinson v. Davenport, 40 Tex. 333; Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. 12; and Farmers' State Bank of Quanah v. Farmers, 157 S. W. 283. The as-signments presenting these questions are therefore overruled.

Having decided that the property in question was the homestead of appellees at the time the indebtedness was incurred, we are next confronted with the question of whether or not there was a substantial compliance with the building contract.

Special issues Nos. 18, 65, 68, 106, and 109, relating to that question, read:

"Special Issue No. 18: Do you find and believe from a preponderance of the evidence that the defendant, G. W. Johnson, as contractor, completed in good faith, construction of the building in question in a substantial compliance with the contract between himself, as contractor, and Powell and Brooks, as owners of the property? Answer Yes or No."

"Special Issue No. 65: Do you find and believe from a preponderance of the evidence that after the city refused to issue its building permit for a brick veneer structure, that the plaintiffs Powell and Brooks instructed the defendant G. W. Johnson to erect said structure with such modifications as to solid brick walls and fire escape as required by the City Code as extras? Answer yes or no."

"Special Issue No. 68: Do you find and believe from a preponderance of the evidence that the building constructed by the defendant G. W. Johnson was in substantial compliance with the contract plans and specifications entered into by and between the said G. W. Johnson and the plaintiffs supplemented by extras ordered, if any you have found, in Special Issue No. 65? Answer yes or no."

We find that the submission of these issues was objected to, and such objection appears under assignments 27, 56, 70, and 72, in Postal's brief.

From a further examination of the brief we find that none of the assignments are referred to in any of the propositions, except No. 27, which is referred to under Postal's proposition No. 36.

The submission of special issue No. 18 is also complained of by Johnson under his assignment No. 12, which is referred to in his brief under his proposition No. 12. We find, however, that Postal's proposition No. 36 merely asserts that the purchaser of a mechanic's lien note, secured by a mechanic's lien given for the construction of a building, does not assume the liability of the construction contract, does not become an insurer of the performance thereof, and is entitled to payment in accordance with the tenor of the mechanic's lien note, regardless of whether the building is constructed in accordance with the contract or not.

This was not the question raised by the assignment and, therefore, the assignment is not germane.

Johnson's proposition No. 12 asserts error

in the submission of special issue No. 19, and the assignment is not germane.

 The above are the only assignments attacking the submission of the issues as to substantial performance, and we are therefore to presume that they were properly submitted.

 The briefs contain also the following assignments:

(Johnson's Brief) Assignment No. 71: "That the verdict and findings of the jury upon each and every special issue submitted by the court under protest and objection of this defendant was contrary to both the law and the evidence."

The same assignment appears in the brief of Postal as assignment No. 163, and the following assignment No. 189: "Because the verdict of the jury and the findings of the jury upon each and every one of the said special issues, numbered 1 to 115, inclusive, that were given over the objection of this defendant, is contrary to the evidence."

These assignments are too general to merit consideration at our hands. 3 Tex. Jur. § 605, and authorities cited.

Postal, by assignments 11, 12, 122, and 123, attacks the sufficiency of the evidence to justify the submission of special issues Nos. 1 and 2. Those issues were as to whether the Lewis plans were included in the contract between Johnson and appellees.

The only proposition presented by Postal which refers to these propositions is its proposition No. 27, and it in no way refers to the question of the sufficiency of the evidence to support these issues and, in fact, makes no reference to them, but merely asserts that Postal under the facts was entitled to a lien for the advancements made by it to Johnson.

The objections to the submission of the issues by Johnson we find embodied in his assignments Nos. 8, 9, 47, and 48. These assignments are referred to in his propositions Nos. 26, 27, 32, 33, and 34.

The above propositions, except No. 34, raise entirely different questions from those of the assignments and are not germane.

 Proposition 34 reads: "The findings of the jury that the Lewis plans were included in the contract originally entered into between plaintiffs and defendant being unsupported by the evidence and erroneous under the uncontroverted evidence in the case, the same should have been disregarded by the court and judgment rendered on Johnson's cross-action for the extras and it was such error as will be reversed by the Court of Civil Appeals for the court to overrule defendant Johnson's motion for judgment upon the verdict."

Special Issue No. 1 reads: "Do you find and believe from a preponderance of the evidence that the plaintiffs, D. F. Powell and W. M. Brooks, and defendant, G. W. Johnson, entered into an agreement for the construction of the improvements in question, according to the terms and conditions of the contract, specifications and Lewis plans, which are in evidence before you? Answer yes or no."

Special Issue No. 2: "Do you find and believe from a preponderance of the evidence that the defendant, Johnson, agreed to do the work and building required by the contract, plans and specifications offered in evidence by the plaintiff, including the Lewis plans, for the sum of $20,000.00? Answer yes or no."

It will be noticed that the above-quoted proposition asserts that the jury found that the Lewis plans were included in the contract originally entered into. We do not so construe the findings.

The findings are, as we understand them, that the parties did include the Lewis plans in their agreement, but we think the effect of their finding is that the Lewis plans were included in the agreement as ultimately made.

Powell testified as follows: "Johnson had plans for a brick veneer and he goes and takes them down to the city hall and they turned them down. When he got the other plans he takes these specifications and changes them and brings them back to me and says, 'this will get it.' He said, 'I have had them in a drawer ever since.' Those papers are in the condition now that they were when he returned them to me, only a little dirty. When we got the other plans I asked Johnson would he do that, and he said, 'yes', and I said, 'can you do it according to the specifications,' and he said, 'yes.' He said he didn't know whether he could do it for that amount of money or not, and I said, 'if you can not do that for that, I don't want it.' He and Brooks both talked to me about it, and Brooks said he would not stand for another penny on it. Johnson and I went to see Brooks about it; Brooks was out in South Dallas and we got in a car and went out there. He was fixing a leak out there in a house. I carried the papers out there to him in my pocket. While we were out there we both said we would not go any farther, and Brooks said he would not stand for another penny. Johnson came back next day—we would not go further, and Johnson came back the next day or a day or two, I don't remember just when and he said he could do it and he said, 'Let's carry the job through.' There was nothing said right then as to what plans and specifications it was to be built by; we got some more plans from Lewis. I had Lewis to make the plans and then after I had Lewis to make the plans I taken the plans to Johnson and Johnson carried them to Whitehead and came back and said he could do the build-

ing, and Johnson accepted the plans and carried these plans. He had already carried his plans to the city and they had turned it down and he taken those plans to the city and the city accepted them, and then we soon went to work to build by these plans and the specifications that I have here."

From the above it appears that Johnson and appellees had made a contract for the construction of the building according to plans and specifications which were not acceptable to the city of Dallas, and that therefore they had a contract which it was impossible for Johnson to perform; that Powell, after learning that the city would not issue a permit for the building as originally planned, had Lewis draw some plans, which Johnson agreed to follow in building the building for the original price. This, of course, is denied by Johnson, but it will support the finding of the jury that the Lewis plans were included in the agreement finally made.

The assignments are not well taken.

■ The property being homestead and the contract not having been substantially performed, the judgment canceling the mechanic's lien and deed of trust lien should be affirmed, unless something occurred in the trial which will call for a reversal.

■■ Powell, while testifying, was asked: "What discussion occurred out there between yourself, Johnson and Brooks about the doing of the work that is specified there for the amount of money that has been agreed upon?" Postal objected on the ground that the question called for parol evidence tending to vary the terms of the written building contract. Brooks was asked a similar question to which the same objection was made. The objections were overruled, and that action of the court is here assigned as error.

Appellants were contending that a subsequent agreement was made between Johnson and appellees that the building was to be constructed as originally planned with such changes as were required by the city, and that such changes were to be extras, while appellees assert that Johnson agreed to build it with the changes for the original contract price of $20,000.

Under such circumstances, the evidence was certainly admissible on the question of whether or not appellees were liable to Johnson for the extras, and if Whitehead, having notice of Johnson's agreement to build the building with the changes shown on the Lewis plans for the original sum, acquiesced in such agreement and advanced the money to Johnson with knowledge of such fact, Postal cannot now complain. The evidence being admissible on Johnson's cross-action, and not as against Postal, its remedy would have been to request that its consideration be limited. This it did not do. The assignments are overruled.

■ Postal further assigns as error the action of the court in requiring its counsel to deliver to appellees' counsel the deed of trust executed by appellees after having it identified by one of appellees while he was a witness.

A certified copy of such deed of trust was attached to appellees' petition and had been read to the jury, and appellants later introduced the same deed in evidence. We fail to see how they were injured by the court's action, and it presents no error.

■ Appellees' witness Hammons, while testifying, was asked why he couldn't get along with Johnson, and he replied, "He wanted to be a rascal and wanted to beat me." Appellants objected, and the court told the jury: "Gentlemen of the Jury, disregard that if you want to." Appellants in their briefs assert that they not only objected to the answer, but requested the court to instruct the jury to disregard it. The bill of exception shows that they merely objected, giving no reason for their objection, and made no request for instruction. The briefs contain several other assignments relative to testimony of Hammons admitted by the court. We have carefully studied the record as to the questions raised and find no error.

■ Adamson, a witness for Postal, was asked if certain language had not been inserted in the deed of trust for the purpose of enabling Postal to purchase the mechanic's lien note at a discount. His reply was that the instrument spoke for itself. Appellants' objection to the question was overruled.

In view of the answer made by the witness, we think the asking of the question, if error, was harmless. Without prolonging this already too lengthy opinion, by a discussion of the numerous assignments attacking the action of the court in both admitting and excluding evidence, suffice it to say that we have given each question presented careful consideration and find no reversible error in the court's action.

■ In the course of the examination of a witness, counsel for appellees resented objections interposed by appellants' counsel, and upon being informed by the court that they had a right to object, replied: "I don't think they have when they are trying to avoid the truth." The bill of exception shows that appellants objected, but requested no action on the part of the court. Appellants now insist that the court should have reprimanded counsel and discharged the jury. No such request was made of the trial court and no error is presented. Appellants also complain of a statement made by appellees' counsel to the effect that he had no confidence in what Mr. Whitehead might say. The qualification

of the trial judge to the bill of exceptions shows that no objection was made to the statement; therefore, no error can be urged here. Upon request of appellants the court instructed the jury to disregard the statement of counsel for appellees that he knew what Johnson had built there could be built for $13,500. This was in compliance with the request of appellants, and we find no error.

The assignments as to the argument of counsel for appellees are without merit and overruled.

■ Postal complains of the submission of special issues Nos. 72, 78, 81, 85, 91, and 93, requested by appellant Johnson.

The issues related to the question between Johnson and appellees as to whether certain items placed in the building were extras or not and were properly submitted under Johnson's cross-action. Moreover, the record shows that no objections to their submission were made in the trial court.

Johnson's right to collect for the items claimed by him as extras depended upon whether or not they were included in the contract finally entered into between him and appellees. If they were included within the original contract price of $20,000, then they were not extras and he would have no claim for them as such. The jury found that they were, therefore his propositions 26 and 27 have no application to the facts here.

Johnson complains of the multiplicity of issues submitted and contends that findings on evidentiary issues should not be required.

As the case was presented to the trial court, the pleadings called for the submission of numerous issues, and while there may have been some submitted which were evidentiary in character and unnecessary to a proper disposition of the case, yet we find that Johnson and his co-appellant, Postal, requested sixty-five of them.

We do not feel that under the facts here the judgment should be reversed upon that ground.

The jury, in answer to Special Issue No. 19, found that the sum of $3,762.44 would be reasonably necessary to complete the building in accordance with the contract, plans and specifications.

The court in its judgment awarded appellees the sum of $3,587.44, and on appellants' motion for new trial modified its judgment by striking therefrom said amount. Postal presents the following propositions as to the court's action:

"Proposition 77: Where a petition in a suit for breach of contract alleges specific elements of damage, and that a certain sum of money is required to be expended to bring the building up to a full compliance, and the jury finds what sum will be required, the trial court cannot set aside such finding of the jury and render a judgment for damages in a lesser or greater amount."

"Proposition 78: Where the jury has returned its verdict, finding that the contractor has not substantially complied with the terms of a building contract, and further in answer to special issues submitted to the jury, it finds that by an expenditure of $3,762.44, the building can be made to comply fully with the terms of the contract; and the court renders judgment upon such verdict cancelling the mechanic's lien note and contract, and in addition thereto the court renders judgment for the sum of $3,587.44, as damages sustained by plaintiffs, it is error for the court upon the hearing of a motion for new trial after the end of the term at which the judgment was rendered, and more than 30 days after the rendition of said judgment, to alter and amend the judgment formerly rendered, by striking therefrom the item of $3,587.44 damages, the only action the court being authorized to take upon the hearing of the motion for new trial, being either to grant or deny said motion."

The evidence showing that the property was the homestead of appellees, then the finding of the jury, supported by sufficient evidence, that the contract had not been substantially complied with, was sufficient to support the judgment canceling the liens, and the question of the amount in which the performance was deficient would not affect that part of the judgment.

■■ Appellees having prayed the court to determine the amount due appellants on a quantum meruit basis and that the damages alleged by them be offset against the amount so found, the court was not justified in allowing them the damages in the absence of any allowance to appellants. His original judgment was therefore erroneous, and his action on the motion for a new trial in striking out that portion of his judgment was certainly proper. The action inured to the benefit of appellants and they cannot here complain.

■ The court, having properly canceled the liens, was justified in refusing to appoint a receiver.

Palmer Haworth, J. E. Whitehead, Postal, and Johnson were all made defendants in the suit. Haworth and Whitehead were later dismissed and the court adjudged that the costs incurred by them should be recovered of their codefendants.

Appellants here contend that such costs should have been assessed against appellees.

■ The matter of taxing costs, and especially in suits of equity, is largely in the discretion of the trial court. Texas & P. Railway Co. v. Davis (Tex. Civ. App.) 66 S. W. 598, error refused; Hines v. Meador (Tex. Civ. App.) 193 S. W. 1111, error refused.

Here Haworth was the trustee named by Postal in the deed of trust and Whitehead had represented Postal in the transaction. Under those facts we cannot say the trial court abused his discretion in awarding the costs as he did.

Postal in its answer asked for judgment against Johnson as an indorser of the mechanic's lien note. Johnson filed no answer to that action.

Postal now contends that the trial court erred in refusing, upon its motion therefor, to render judgment in its favor against Johnson for the amount of the mechanic's lien note and its costs.

The judgment rendered by the trial court, while correct as to the questions presented between appellees and appellants, did not adjudge the rights between Johnson and Postal. It will, therefore, be amended and judgment here rendered that the Postal Savings & Loan Association have and recover of G. W. Johnson the sum of $20,000, being the amount of the mechanic's lien note, and all its costs.

Repeatedly in the briefs of appellants we find them appealing to us to reverse the judgment because of the fact that it allows appellees the benefit of such improvements as were placed on the property by Johnson and gives neither Johnson nor Postal anything in return therefor.

The trial judge certifies that appellees attempted to prove by qualified witnesses the value of the material and labor put into the improvements by Johnson, but that appellants objected to the introduction of such evidence and that by reason thereof he was unable to render any judgment on a quantum meruit basis.

We have given this case months of careful study and have concluded that except as to the amendment above made it should be affirmed.

Judgment amended and, as amended, affirmed.